**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY CRAIG HUCKABEE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MEDICAL STAFF at CSATF, et al.,<br><br>　　　　Defendants. | Case No.: 1:09-cv-00749-LJO-BAM PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS<br><br>(ECF No. 39) |

**Findings and Recommendations**

### I. Background

Plaintiff Anthony Craig Huckabee ("Plaintiff") is a state prisoner, currently proceeding pro se, in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's second amended complaint, filed on August 21, 2012 by Plaintiff's then appointed voluntary counsel, for (1) deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants Diaz, McGuiness, Wu, Bhatt, Nguyen, Garcia, Jimenez, Jeffreys, Chief Medical Officer at CSATF, and Chief Pharmacist at CSATF; (2) negligence against Defendants Diaz, Jeffreys, Jimenez; and (3) medical malpractice against Defendants McGuiness, Wu, Bhatt and Nguyen; (4) violation of the Unruh Civil Rights Act, California Civil Code § 51, against all defendants; and (5) negligent infliction of emotional distress against all defendants.

On December 30, 2012, Defendants Diaz, Wu, Bhatt and Nguyen filed the instant motion to dismiss for failure to state a claim. Plaintiff, through his appointed voluntary counsel[1], filed an opposition on December 24, 2012, and Defendants replied on December 28, 2012. The motion is deemed submitted. Local Rule 230(l).

## II.   Second Amended Complaint Allegations

Plaintiff currently is housed at Valley State Prison. The events alleged in his second amended complaint occurred while Plaintiff was housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California. Plaintiff alleges as follows: On or around late 1998, Plaintiff was diagnosed with open angle glaucoma. On June 14, 2000, upon entering CSATF, Plaintiff was given an initial assessment and prescribed eye drops – Timilol at .5% strength and Xalatan at .5% strength – to treat his glaucoma. On July 5, 2000, without consultation from an ophthalmologist, Defendant Nguyen reduced the strength of the Timilol to .25% and canceled the prescription for the Xalatan. Plaintiff was referred to ophthalmology. Due to the change in prescriptions, Plaintiff began to suffer great pain from increased pressure in both his right and left eyes. On August 31, 2000, Plaintiff's ophthalmology consultation was cancelled at the doctor's request. The consultation was not rescheduled.

On October 19, 2000, Plaintiff was examined by Dr. Perkinson, an optometrist, regarding pain caused by an increase of pressure in his left eye. Dr. Perkinson noted that the pressure in Plaintiff's right eye measured 13, while the pressure in Plaintiff's left eye measured 17.

On March 7, 2002, Plaintiff was examined by Dr. Medina, an optometrist, who prescribed Timilol at .5% strength and artificial tears to treat the increased pressure in Plaintiff's left eye.

Between March and August of 2002, Plaintiff was referred to ophthalmology two times and each time the referrals were denied by an unidentified employee of the CSATF medical staff. During this period, the pressure in Plaintiff's left eye continued to steadily increase.

---

[1] On July 26, 2013, the Court granted the motion of Plaintiff's appointed counsel to withdraw from representation and substituted Plaintiff in pro per. The briefing on the instant motion to dismiss was completed prior to the withdrawal of Plaintiff's counsel.

2

On September 16, 2002, Dr. Deere wrote Plaintiff a referral to ophthalmology, but the referral was denied by CSATF medical staff.

On July 30, 2003, Dr. Gonzales again referred Plaintiff to ophthalmology.

On October 8, 2003, Defendant Garcia, an optometrist, examined Plaintiff and noted the pressure in his left eye was 30. Defendant Garcia informed Plaintiff that his eye drop medication should be increased in strength and referred Plaintiff to ophthalmology. The change in the eye drop medication was never prescribed.

On October 10, 2003, Plaintiff was scheduled to see Dr. Kazi, an ophthalmologist, but the doctor was unable to examine Plaintiff because he was scheduled at the same time as five other inmates. Plaintiff's ophthalmology consultation was rescheduled for January 9, 2004, but as Plaintiff had the flu and was unable to travel on that day his ophthalmology referral was rescheduled for February 13, 2004.

On February 13, 2004, the day of Plaintiff's appointment, guards refused to inform Plaintiff where they were taking him. Plaintiff was unaware that his ophthalmology consultation had been rescheduled and he refused to go with the guards absent information of where he was travelling.

On March 26, 2004, Dr. Wu examined Plaintiff and referred him for a routine ophthalmology appointment. The referral was approved, but Plaintiff was never examined by an ophthalmologist.

On August 4, 2004, Plaintiff requested an ophthalmology referral due to pain and blurriness in his left eye. Defendant Wu denied the request and referred Plaintiff to optometry.

On August 25, 2004, Plaintiff was examined by Defendant Garcia, who noted that the pressure in Plaintiff's left eye had risen to 32 and pressure in his right eye was 22. Defendant Garcia again informed Plaintiff that his eye drop medication should be increased in strength and referred him for routine ophthalmology. The change in the eye drop medication was never prescribed.

On or around October 18, 2004, both Defendants Bhatt and Wu denied Plaintiff's request for an ophthalmology consultation with full knowledge of the increased pressure in Plaintiff's left eye.

On January 1, 2005, with knowledge that the pressure was increasing in Plaintiff's eye, Defendant Wu denied Plaintiff's medical requests for an ophthalmology referral. On February 11 and

March 9, 2005, Plaintiff requested an ophthalmology referral but his requests were denied by an unidentified employee of the CSATF medical staff.

On or around April 27, 2005, with knowledge of the increasing pressure in Plaintiff's eye and absent an ophthalmologist consultation, Defendant Wu reduced the strength of Timilol from .5% to .25%.

On May 22, 2005, Plaintiff submitted a request to see an ophthalmologist due to severe pain and a dramatic loss of vision in his left eye. Plaintiff's request was denied by an unidentified employee of the CSATF medical staff.

On May 26 and June 2, 2005, Plaintiff submitted medical requests for renewal of his eye drop medication, noting that his prescription expired June 7, 2005. Plaintiff's eye drop medication was not renewed. Plaintiff was informed by a nurse that he would have to submit a refill slip in order to renew his medication. On June 10, June 17, and again on June 23, 2005, Plaintiff submitted refill slip requests, but his eye drop medication was not renewed.

On or around June 28, 2005, Plaintiff spoke with Defendant Jeffreys and conveyed his concern about going so long without his eye drop medication. Plaintiff told Defendant Jeffreys that he suffered severe pain from the increased pressure in his left eye and he feared going blind. Defendant Jeffreys told Plaintiff to bring his refill request slip to the medical window by noon and he would personally take care of the prescription refill. Plaintiff did as suggested, but the medication was not refilled.

On or around July 5, 2005, Plaintiff submitted another refill request to no avail. On July 8, 2005, Plaintiff submitted yet another refill request. This time, Plaintiff spoke with Defendant Jimenez and informed him that he had glaucoma, the pressure in his eye had been steadily increasing, he suffered great pain in his eye from this pressure, and he feared going blind because of the increased pressure. Defendant Jimenez assured Plaintiff that he would handle his refill request personally. This assurance was given again on July 11, July 14, and July 18, 2005, but Plaintiff's eye drop medication was not refilled.

On July 21, 2005, Plaintiff submitted a grievance due to the failure to renew his eye drop medication. On August 5, 2005, Plaintiff was informed via appeal process that his eye drop medication would not be renewed without a physician's order and it was suggested that he visit the

4

RN sick call window.  On August 11, 2005, Plaintiff submitted another grievance noting that he was informed by the RN sick call window that if he wanted medications renewed, Plaintiff would have to put in a sick call or submit a refill slip.  Plaintiff had already tried both recommended actions.  In addition, Plaintiff was told that the medical staff was too busy to see him unless it was an emergency.

On August 12, 2005, Plaintiff's eye drop medication was finally renewed by Defendant Bhatt.  Plaintiff was without his medication for three months and was forced to initiate an appeal process in order to receive said medication.

On February 7, 2006, Plaintiff was examined by Dr. Medina who noted that the pressure in Plaintiff's left eye had increased to 38.  Dr. Medina wrote a referral to ophthalmology.  Both Defendants Wu and McGuiness denied the request for a referral to ophthalmology.

On February 8, 2006, Plaintiff was examined by Defendant Nguyen who refused to refer Plaintiff to ophthalmology despite the increased pressure in Plaintiff's eye.  Plaintiff informed Defendant Nguyen that the increased pressure in his eye was very painful and that he feared going blind.  Plaintiff was told by Defendant Nguyen that his eye drop medication would be renewed but he would not be referred to ophthalmology.  Plaintiff's eye drop medication was not renewed.

On February 28, 2006, Plaintiff appealed Defendant Nguyen's treatment and his refusal to refer Plaintiff to ophthalmology.  Plaintiff also requested renewal of his eye drop medications.  On March 20, 2006, Plaintiff was seen by Dr. Greene who submitted a renewal request for the eye drop medication.  On April 28 and May 1, 2006, Plaintiff's prescription for Timilol was renewed and dispensed at a continued .25% strength.

On or around May 5, 2006, Plaintiff awoke to a severe loss of vision and extreme pain in his left eye.  On or around May 22, 2006, Plaintiff submitted a medical request for an emergency ophthalmology consultation.  Defendant McGuiness, with full knowledge of the increased pressure in Plaintiff's eye and the severe pain he was suffering, denied the ophthalmology request.

On May 25, 2006, Plaintiff was examined by Dr. Salmi.  Dr. Salmi, recognizing a cause for concern due to the increased pressure in Plaintiff's eye, wrote an urgent referral to ophthalmology.  Defendant McGuiness denied the referral.

On July 27, and again on August 18, 2006, Plaintiff was seen by Dr. Salmi who referred Plaintiff for an urgent ophthalmology consult. Each time, Defendant McGuiness denied the referral requests.

On or around September 10, 2006, Plaintiff awoke to severe pain and approximately 80% loss of vision in his left eye. Plaintiff immediately alerted medical staff of his condition.

On September 15, 2006, Plaintiff was taken for an emergency ophthalmology consultation with Dr. Yaplee. After examining Plaintiff, Dr. Yaplee informed Plaintiff that he had irreparable nerve damage caused by increased pressure build-up in his left eye. Dr. Yaplee further stated that the loss of vision was caused by the increased pressure in Plaintiff's left eye. Dr. Yaplee prescribed Plaintiff Timilol at .5% strength and Xalatan at .5% strength and recommended a laser procedure to repair nerve damage.

On November 13, 2006, Plaintiff was examined by Dr. Salmi who referred Plaintiff for an urgent ophthalmology follow-up with Dr. Yaplee. On December 8, 2006, after continuous use of both eye drop medications, the pressure in Plaintiff's eye had dropped to 18. On or around April 10, 2007, Plaintiff was examined by an optometrist who noted that after use of proper medications the pressure in Plaintiff's left eye had reduced to 18. On or around September 11, 2007, Plaintiff was examined again and the pressure in his left eye was 18.

On November 14, 2008, Dr. Yaplee performed a laser procedure in an attempt to repair the nerve damage in left eye, but there was no beneficial effect.

On or around March 19, 2010, Plaintiff was examined by Dr. Rachid, an ophthalmologist, whom recommended continued usage of both eye drop medications as well as a laser surgery to correct nerve damage in Plaintiff's left eye. On or around April 28, 2010, Dr. Rachid performed the laser surgery with no beneficial effect. Following the surgery, Plaintiff was in severe agony and pain for approximately one month. During a follow-up consultation with Dr. Rachid, the doctor informed Plaintiff that there was too much nerve damage to Plaintiff's left eye and that he would never regain vision in his eye.

As of the filing of the complaint, Plaintiff continued to take Timilol at .5% strength and Xalatan at .5% strength for his glaucoma condition. Plaintiff alleges that he continues to and will continue to suffer from blindness, headaches, and constant irritation in his left eye.

**III.    Motion to Dismiss Legal Standard**

A motion to dismiss for failure to state a claim is properly granted where the complaint lacks "a cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988)). While accepting factual allegations in the complaint as true, the court is not required to accept legal conclusions as true, and the factual allegations must state a plausible claim for relief. Maya v. Centex Corp., 658 F.3d 1060, 1067-68 (9th Cir. 2011).

In considering a motion to dismiss for failure to state a claim, the court generally considers only the contents of the complaint and accepts as true the facts alleged in the complaint. Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Shaver v. Operating Engineers Local 428 Pension Trust Fund, 332 F.3d 1198, 1201, 1203 (9th Cir. 2002). Additionally, the court construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. Id.

**IV.    Discussion**

Defendants Diaz, Wu, Bhatt and Nguyen argue that Plaintiff's second amended complaint should be dismissed because: (1) Plaintiff fails to set forth any factual allegations against Warden Diaz; (2) he failed to comply with the claim presentation requirement of California's Government Claims Act; and (3) his claims are barred by the applicable statute of limitations.

**A.  Warden Diaz**

Defendants first argue that Plaintiff's complaint is devoid of any factual allegations against Warden Diaz.

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by those acting under color of state law. E.g., Patel v. Kent School Dist., 648 F.3d 965, 971 (9th Cir. 2011); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). For each defendant, Plaintiff must

show a causal link between the violation of his rights and an action or omission of the defendant. Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S.Ct. 1937,1949 (2009); Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011). The second amended complaint is devoid of any factual allegations linking Warden Diaz to any alleged violation of Plaintiff's constitutional rights and Plaintiff has failed to identify any specific allegations involving Warden Diaz in connection with any of his causes of action.

Defendants next argue that to the extent Plaintiff intends to rely on a theory of supervisory liability for his claims against Warden Diaz, he may not do so. Under section 1983, there is no respondeat superior liability, and each defendant may only be held liable for misconduct that can be directly attributed to him or her. Iqbal, 556 U.S. at 667, 129 S.Ct. at 1949-50; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). Defendants are correct that Plaintiff may not pursue claims based on supervisory liability against Warden Diaz.

Plaintiff counters that he is suing Warden Diaz in his official capacity, and therefore the action should be treated as a suit against the State of California. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989) (a suit against a state official in his official capacity is no different from a suit against the State itself). As noted by Defendants, however, the Eleventh Amendment bars actions against state officials sued in their official capacities when damages are sought. Doe v. Lawrence Livermore Nat. Laboratory, 131 F.3d 836, 839 (9th Cir. 1997). Accordingly, the Court finds that Plaintiff may not pursue his damages claims against Warden Diaz in his official capacity. The Court recognizes that a suit for prospective injunctive relief provides an exception to Eleventh Amendment immunity. Id. However, Plaintiff's second amended complaint does not include a request for prospective injunctive relief. (ECF No. 33, pp. 24-25.) Instead, the relief sought by this action relates solely to past violations of state and federal law.

Even if the Court were to construe Plaintiff's complaint to contain a request for prospective injunctive relief, Plaintiff cannot maintain an official capacity suit. Plaintiff contends that in an official capacity suit he must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. Hafer v. Melo, 502 U.S. 21, 25 (1991). Plaintiff asserts that he has identified several Department of Corrections and Rehabilitation Regulations and Inmate Medical Services Policies & Procedures that were disregarded. (ECF No. 33,

¶¶ 46-52.)  Plaintiff argues that the lack of adherence to these policies and procedures played a part in Plaintiff's injuries.  (ECF No. 33, ¶ 53.)

Plaintiff's argument is not persuasive.  Plaintiff does not take issue with the entity's regulations or procedures.  Instead, he complains that the regulations were not followed.  (ECF No. 33, ¶ 53.)  As a result, Plaintiff has failed to demonstrate that an official policy or custom created or enforced by Warden Diaz caused Plaintiff to suffer constitutional injury.  In other words, Plaintiff has not demonstrated that any underlying policy or custom of the California Department of Corrections and Rehabilitation played a part in the alleged violations.  Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law") (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 659, 694 (1978)).

Based on the above, the Court finds that Plaintiff has not stated a claim against Warden Diaz in his official capacity and recommends that Warden Diaz be dismissed from this lawsuit.

### B. Claim Presentation Requirement of the California's Government Claims Act

Defendants contend that Plaintiff's state law claims for negligence, medical malpractice, negligent infliction of emotional distress, and violation of the Unruh Civil Rights Act must be dismissed because Plaintiff has failed to allege compliance with the claim presentation requirement of California's Government Claims Act ("GCA").

The GCA requires that a party seeking to recover money damages from a public entity or its employees must present a claim to the California Victim Compensation and Government Claims Board ("Board") before filing suit in court, generally no later than six months after the cause of action accrues.  See Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2  Timely claim presentation is not merely a procedural requirement of the GCA, but is an element of a plaintiff's cause of action. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 209, 64 Cal.Rptr.3d 210, 164 P.3d 630 (2007). Thus, when a plaintiff asserts a claim subject to the GCA, he must affirmatively allege compliance with the claim presentation procedure, or circumstances excusing such compliance, in his complaint.  Id.  This requirement applies in federal court.  Karim–Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir.1988).

Here, Plaintiff's complaint does not allege that he has complied with, or should be excused from, the claim presentation requirement. Indeed, his opposition to the motion to dismiss confirms that he did not comply with the claim presentation requirement. However, Plaintiff argues that he should be excused from such compliance because he filed multiple inmate grievances. This argument is unavailing. Inmate grievances submitted to the prison do not satisfy the statutory requirements of claim presentation to the Board. See, e.g., Shirk, 42 Cal.4th at 208.

Plaintiff also argues that, while proceeding pro se, he was ignorant of the technical procedural requirements of filing a claim. This argument is not persuasive. The complaints filed by Plaintiff in this action while he was proceeding pro se did not include state law claims requiring claim presentation or knowledge of the technical requirements for such claim presentation. (ECF Nos. 1, 10, 12, 15, 19.) Rather, it was Plaintiff's *counsel* that included state law claims requiring claim presentation in the second amended complaint. (ECF No. 33.)

Further, Plaintiff's assertion that he was not aware of the "technical procedural requirements" for filing a claim is belied by the records of the Victim Compensation and Government Claims Board.[2] According to those records, Plaintiff filed five claims in the period between 2000 and 2011. (ECF No. 40, Exs. A-E.) Those claims include one against "all medical staff at [Corcoran State Prison] from – 2000 thru [sic] 2008" in which Plaintiff alleged that in January 2008 medical staff gave him weaker medications than he was prescribed, resulting in increased eye pressure, nerve damage, and vision loss. (ECF No. 40-5, Ex. E, pp. 14-15.) The claim initially was not processed because Plaintiff failed to pay the filing fee. (ECF No. 40-5, Ex. E, p. 13.) The claim was returned to Plaintiff with instructions on how to request a waiver of the filing fee if he was unable to pay it. (Id.) Plaintiff resubmitted the claim, but it was returned to him as untimely. (ECF No. 40-5, Ex. E, p. 8.) Plaintiff was instructed on how to apply for leave to present a late claim. (Id.) Plaintiff applied for leave to present a late claim, but his application was denied. (ECF No. 40-5, Ex. E, pp. 3-7.) The denial letter,

---

[2] In conjunction with the motion to dismiss, Defendants also filed a request that the Court take judicial notice of the certified records of the Victim Compensation and Government Claims Board pursuant to Federal Rule of Evidence 201. (ECF No. 40.) Defendants' request is granted. Mack v. South Bay Beer Distributors Inc., 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other grounds by Astoria Fed. Sav. and Loan Ass'n v. Solimino, 501 U.S. 104 (1991). The Court may consider the records on a motion to dismiss without converting it into a motion for summary judgment. Id.

1   dated February 26, 2009, informed Plaintiff that if he wished to pursue the matter further, he was
2   required to "petition the appropriate court for an order relieving [him] from the provision of
3   Government Code Section 945.4" within six months from the date his application was denied.  (ECF
4   No. 40-5, Ex. E., p. 3.)  Plaintiff has not alleged or argued that he petitioned the court for an order
5   excusing him from the timely claim presentation requirement, and his time to do so has expired.
6       Based on the foregoing, the Court recommends that Plaintiff's state law claims be dismissed
7   for failure to allege compliance with the GCA.

### C.  Statute of Limitations

9   Defendants contend that Plaintiff's claims against them are barred by the statute of limitations
10  and should be dismissed.
11      As section 1983 contains no specific statute of limitations, federal courts borrow state statutes
12  of limitations for personal injury actions in § 1983 suits. See Wallace v. Kato, 549 U.S. 384, 387
13  (2007); Lukovsky v. City of San Francisco, 535 F.3d 1044, 1048 (9th Cir.2008).  Federal courts
14  should also borrow all applicable provisions for tolling the limitations period found in state law.
15  Wallace, 549 U.S. at 387.  The parties agree that California's statute of limitations for an action for a
16  personal injury caused by the wrongful or negligent act of another is two years from the date of
17  accrual.  Cal. Civ. Proc. Code § 335.1.  The parties also agree that California's statute of limitations
18  may be tolled up to two years for a prisoner's monetary damage claims. Id. § 352.1.  Thus, Plaintiff's
19  claims must have accrued within the four years preceding April 29, 2009, the date this lawsuit was
20  filed.[3]  Federal law determines when a cause of action accrues and the statute of limitations begins to
21  run for a § 1983 claim. Lukovsky, 535 F.3d at 1048.  A federal claim accrues when the plaintiff knows
22  or has reason to know of the injury which is the basis of the action. Id. at 1051.
23      Defendants argue that Plaintiff's claims for relief accrued, and the statute of limitations began
24  to run, when Defendants' allegedly wrongful provision of proper treatment for Plaintiff's glaucoma
25  resulted in an injury; that is, increased pressure and pain in his eyes.  As to Dr. Nguyen, Plaintiff

---

[3]  As Plaintiff's original complaint and accompanying proof of service are undated, the Court cannot apply the prison mailbox rule for filing.  Douglas v. Noelle, 567 F.3d 1103, 1107-09 (9th Cir. 2009).  Therefore, for purposes of the statute of limitations, the Court relies on the date the original complaint was received and filed in this action.  (ECF No. 1.)  Plaintiff's appointed counsel did not provide any information to otherwise challenge the effective filing date.

11

1  alleges that on July 5, 2000, Dr. Nguyen reduced the strength of his prescribed Timilol and canceled
2  his Xalatan prescription, causing increased pressure and pain in both of his eyes. Defendants therefore
3  assert that Plaintiff's claims against Dr. Nguyen began to accrue on that date, which is more than four
4  years before Plaintiff initiated this action. As to Dr. Wu, Plaintiff alleges that on August 4, 2004, Dr.
5  Wu denied Plaintiff's request for an ophthalmology referral after Plaintiff informed him that he was
6  suffering pain and blurriness in his eye. Defendants therefore assert that Plaintiff's claims against Dr.
7  Wu began to accrue on that date, which is more than four years before Plaintiff initiated this action.
8  As to Dr. Bhatt, Plaintiff alleges that Dr. Bhatt denied his request for an ophthalmology referral on
9  October 18, 2004, despite knowing that the pressure in Plaintiff's eyes was increasing. (ECF No. 33, ¶
10 26.) Defendants therefore assert that Plaintiff's claims against Dr. Bhatt began to accrue on that date,
11 which is more than four years before Plaintiff initiated this action.
12         Plaintiff counters that his cause of action did not accrue until there was appreciable harm
13 coupled with the reasonable suspicion that the harm was caused by a negligent act. Jolly v. Eli Lilly,
14 44 Cal.3d 1103, 1109 (1988). Applying that standard, Plaintiff argues that his claims did not accrue
15 until after he became blind and it was confirmed in November 18, 2008, that he would never regain his
16 vision. Plaintiff alternately contends that his claims did not accrue until, at the earliest, April 10, 2007,
17 when doctors allegedly reported that had Plaintiff used the proper medications as originally prescribed,
18 he would not have lost the vision in his eye. Plaintiff's reliance on Jolly is misplaced for section 1983
19 actions as the Jolly court expressly applied California, not federal, law to the determination of when
20 the cause of action accrued. Jolly, 44 Cal.3d at 1109 n. 4. As stated above, under federal law, a claim
21 accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.
22 Lukovsky, 535 F.3d at 1051.
23         Even if the Court were to apply the Jolly standard to Plaintiff's state law causes of action, his
24 assertion of when his claims accrued is not supported by the allegations in his complaint. At a
25 minimum, Plaintiff's claims began to accrue when he experienced increasing pressure in his eye(s)
26 from the reduction or denial of his eye medication by Dr. Nguyen in July 2000. (ECF No. 33, ¶ 19.)
27 Based on his allegations, Plaintiff had appreciable harm coupled with a reasonable suspicion that the
28 harm was caused by the negligent act of Dr. Nguyen in reducing and/or stopping his eye medication.

Jolly, 44 Cal.3d at 1109. To the extent that the increased pressure was not "appreciable" harm, Plaintiff's complaint also alleges that in August 2004 he experienced both pain and blurriness in his eye and requested an ophthalmology referral. (ECF No. 33, ¶ 26.) Thus, Plaintiff's argument regarding the earliest date upon which his claims began to accrue under Jolly is not sustained by his complaint.[4]

Accrual-Dr. Nguyen

In his second amended complaint, Plaintiff makes the following allegations against Dr. Nguyen:

> On or around July 5, 2000, without consultation from an ophthalmologist, Defendant Nguyen reduced the strength of the Timilol to .25% and canceled the prescription for the Xalatan. . . . As a result, Plaintiff began to suffer great pain from increased pressure in both his right and left eyes.  (ECF No. 33, ¶ 19.)

> On February 8, 2006 Plaintiff was examined by Defendant Nguyen whom refused to refer Plaintiff to ophthalmology despite the increased pressure in Plaintiff's eye. Plaintiff informed Defendant Nguyen that the increase pressure in his eye was very painful and that he feared going blind. Plaintiff was told [b]y Defendant Nguyen that his eye drop medication would be renewed but he would not be referred to ophthalmology. Plaintiff's eye drop medication was not renewed. (ECF No. 33, ¶ 36.)

According to Plaintiff's allegations, his claims against Dr. Nguyen based on reduction and/or cancellation of his eye medication began to accrue in July 2000. At that point, Plaintiff knew or had reason to know of the injury which is the basis of his action because the alteration of his medications caused him to "suffer great pain from increased pressure" in both of his eyes. Lukovsky, 535 F.3d at 1051. To the extent Plaintiff's claims against Dr. Nguyen are based on the reduction in medication in July 2000, the Court finds that they are barred by the relevant statute of limitations. However, Plaintiff's claims against Dr. Nguyen based on the alleged failure to refer him to ophthalmology or the

---

[4] Although Plaintiff has not explicitly raised the continuing violations doctrine, the Court does not find it applicable in this case. Under that doctrine, a claim to redress continuing wrongs will be deemed to have accrued on the date of the last wrongful act. Sisseton-Wahpeton Sioux Tribe of Lake Travers Indian Reservation v. United States, 895 F.2d 588, 597 (9th Cir. 1990)  However, allegations of a series of repeated "bad acts" by a defendant do not suffice, Sisseton-Wahpeton, 895 F.2d at 597, and neither do allegations of distinct instances of injurious conduct which have a continuing impact, McDougal v. County of Imperial, 942 F.2d 668, 674-75 (9th Cir. 1991). Plaintiff alleges isolated instances involving requests for medication, requests for referrals or requests for medication refills and treatment from different medical providers.

13

failure to ensure his prescriptions were refilled did not accrue until February 2006, and therefore they are not barred by the applicable statute of limitations period.

Accrual-Dr. Wu

In the second amended complaint, Plaintiff makes the following allegations regarding Dr. Wu:

On March 26, 2004, Dr. Wu examined Plaintiff and referred him for a routine ophthalmology appointment. Again, the referral was approved but Plaintiff was never examined by an ophthalmologist. (ECF No. 33, ¶ 25.)

On August 4, 2004 Plaintiff requested an ophthalmology referral due to pain and blurriness in his left eye. Defendant Wu denied the request and referred Plaintiff to optometry. On August 25, 2004 Plaintiff was examined by Defendant Garcia, whom noted that the pressure in Plaintiff's left eye had risen to 32 and pressure in his right eye was 22. Defendant Garcia again informed Plaintiff that his eye drop medication should be increased in strength and referred him for a routine ophthalmology. The change in the eye drop medication was never prescribed. On or around October 18, 2004, both Defendants Bhatt and Wu denied Plaintiff's request for an ophthalmology consultation with full knowledge of the increased pressure in Plaintiff's left eye. (ECF No. 33, ¶ 26.)

On January 1, 2005 with knowledge that the pressure was increasing in Plaintiff's eye, Defendant Wu denied Plaintiff's medical requests for an ophthalmology referral. On February 11 and March 9, 2005 Plaintiff requested an ophthalmology referral but his requests were denied by an unidentified employee of the CSATF medical staff. (ECF No. 33, ¶ 27.)

On or around April 27, 2005, with knowledge of the increasing pressure in Plaintiff's eye and absent an ophthalmologist consultation, Defendant Wu reduced the strength of Timilol from .5% to .25%. (ECF No. 33, ¶ 28.)

On February 7, 2006 Plaintiff was examined by Dr. Medina who noted that the pressure in Plaintiff's left eye had increased to 38. Dr. Medina wrote a referral to ophthalmology. Both Defendants Wu and McGuinness denied the request for a referral to ophthalmology. (ECF No. 33, ¶ 35.)

Based on these allegations, Plaintiff's claims against Dr. Wu regarding appropriate eye medication accrued, at the very latest, on April 27, 2005, when Dr. Wu reduced the strength of Plaintiff's eye medication despite the "increasing pressure" in Plaintiff's eye. At that point, if not earlier, Plaintiff knew or had reason to know that the condition of his eye was at risk and that risk was caused by the failure to receive medication in the appropriate strength from Dr. Wu. Lukovsky, 535 F.3d at 1048-51. The Court finds that Plaintiff's claims based on factual allegations that Dr. Wu prescribed reduced strength medication on April 27, 2005, are barred by the statute of limitations.

Similarly, those claims against Dr. Wu based on events occurring in 2004 and January 2005 are barred by the statute of limitations. However, Plaintiff's claims based on factual allegations that Dr. Wu denied Plaintiff's referral to ophthalmology in 2006 are not barred by the relevant statute of limitations.

<u>Accrual-Dr. Bhatt</u>

In his second amended complaint, Plaintiff makes the following allegations against Dr. Bhatt:

> On August 4, 2004 Plaintiff requested an ophthalmology referral due to pain and blurriness in his left eye. Defendant Wu denied the request and referred Plaintiff to optometry. On August 25, 2004 Plaintiff was examined by Defendant Garcia, whom noted that the pressure in Plaintiff's left eye had risen to 32 and pressure in his right eye was 22. Defendant Garcia again informed Plaintiff that his eye drop medication should be increased in strength and referred him for a routine ophthalmology. The change in the eye drop medication was never prescribed. On or around October 18, 2004, both Defendants Bhatt and Wu denied Plaintiff's request for an ophthalmology consultation with full knowledge of the increased pressure in Plaintiff's left eye. (ECF No. 33, ¶ 26.)

> On August 12, 2005 Plaintiff's eye drop medication was finally renewed by Defendant Bhatt. Plaintiff was without his medication for three months and was forced to initiate an appeal process in order to receive said medication. (ECF No. 33, ¶ 34.)

Based on the complaint, Plaintiff's claims against Dr. Bhatt based on the alleged denial of a request for an ophthalmology consultation accrued in October 2004. At that point, Plaintiff knew or had reason to know that the condition of his eye was at risk due to denial of an ophthalmology consultation. Lukovsky, 535 F.3d at 1048-51. Accordingly, such claims are barred by the relevant statute of limitations. Further, to the extent that Plaintiff attempts to bring any purported claims based on Dr. Bhatt's eye drop medication renewal in August 2005, which is within the statute of limitations, he may not do so. Plaintiff does not allege that such renewal supports any claims for relief. Cf. Maya, 658 F.3d at 1067-68 (factual allegations must state a plausible claim for relief). Indeed, all of Plaintiff's causes of action are based, in part, on delays in refilling and renewing his eye medication or denial of consistent access to such medication. (ECF No. 33, ¶¶ 61.d., 71, 72, 85.d., 92, 97.) Therefore, the Court finds that Plaintiff's claims against Dr. Bhatt are barred by the statute of limitations and should be dismissed.

///

### III.     Conclusion and Recommendation

Based on the foregoing, the Court RECOMMENDS that Defendants' motion to dismiss, filed on December 30, 2012, be GRANTED IN PART and DENIED IN PART as follows:

1.      Defendants' motion to dismiss for failure to state a claim against Defendant Warden Diaz be GRANTED;

2.      Defendants' motion to dismiss Plaintiff's state law causes of action for negligence, medical malpractice, negligent infliction of emotional distress, and violation of the Unruh Civil Rights Act be GRANTED based on a failure to allege compliance, or excusal from compliance, with the claim presentation requirement of California's Government Claims Act; and

3.      Defendants' motion to dismiss Plaintiff's claims against Dr. Nguyen as barred by the statute of limitations be GRANTED with regard to events occurring in 2000 and DENIED with regard to events occurring in 2006.

4.      Defendants' motion to dismiss Plaintiff's claims against Dr. Wu as barred by the statute of limitations be GRANTED with regard to events occurring prior to April 29, 2005, and DENIED with regard to events occurring after April 29, 2005; and

5.      Defendants' motion to dismiss Plaintiff's claims against Dr. Bhatt as barred by the statute of limitations be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

   Dated:   __**August 20, 2013**__                    ___/s/ Barbara A. McAuliffe___
                                                                              UNITED STATES MAGISTRATE JUDGE