**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY CRAIG HUCKABEE, | ) Case No.: 1:09-cv-00749-LJO-BAM PC |
| Plaintiff, | ) ORDER DENYING DEFENDANT GARCIA'S |
| | ) MOTION TO DISMISS AS MOOT |
| v. | ) (ECF No. 52) |
| MEDICAL STAFF at CSATF, et al., | ) FINDINGS AND RECOMMENDATIONS |
| Defendants. | ) REGARDING DEFENDANT GARCIA'S |
| | ) AMENDED MOTION TO DISMISS |
| | ) (ECF No. 67) |
| | ) (30 DAY DEADLINE) |

## I.    Background

Plaintiff Anthony Craig Huckabee ("Plaintiff") is a state prisoner, currently proceeding pro se, in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's second amended complaint, filed on August 21, 2012, for deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants McGuiness, Wu, Nguyen, Garcia, Jimenez, Jeffreys, Chief Medical Officer at CSATF, and Chief Pharmacist at CSATF.

On May 30, 2013, Defendant Garcia filed a motion to dismiss the action against him without leave to amend.  (ECF No. 52.)  Subsequently, on August 2, 2013, Defendant Garcia filed an amended motion to dismiss, along with a request for judicial notice.  (ECF Nos. 67, 68.)  Plaintiff did not file an opposition to either motion to dismiss.  On September 16, 2013, Defendant Garcia filed a reply

regarding his amended motion to dismiss.  (ECF No. 84.)  The motions are deemed submitted.  Local Rule 230(l).

## II.      Motion to Dismiss filed on May 30, 2013

Defendant Garcia filed an amended motion to dismiss on August 2, 2013.  The amended motion supplants the original motion to dismiss filed on May 30, 2013.  Accordingly, Defendant Garcia's motion to dismiss, filed on May 30, 2013, is DENIED as moot.

## III.      Findings and Recommendations Regarding Amended Motion to Dismiss filed on August 2, 2013

### A.  Second Amended Complaint Allegations

The events alleged in Plaintiff's second amended complaint occurred while Plaintiff was housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California.

Plaintiff alleged as follows:  In late 1998, Plaintiff was diagnosed with open angle glaucoma.  On June 14, 2000, upon entering CSATF, Plaintiff was given an initial assessment and prescribed eye drops – Timilol at .5% strength and Xalatan at .5% strength – to treat his glaucoma.  On July 5, 2000, without consultation from an ophthalmologist, Defendant Nguyen reduced the strength of the Timilol to .25% and canceled the prescription for the Xalatan.  Plaintiff was referred to ophthalmology.  Due to the change in prescriptions, Plaintiff began to suffer great pain from increased pressure in both his right and left eyes.  On August 31, 2000, Plaintiff's ophthalmology consultation was cancelled at the doctor's request. The consultation was not rescheduled.

On October 19, 2000, Plaintiff was examined by Dr. Perkinson, an optometrist, regarding pain caused by an increase of pressure in his left eye.  Dr. Perkinson noted that the pressure in Plaintiff's right eye measured 13, while the pressure in Plaintiff's left eye measured 17.

On March 7, 2002, Plaintiff was examined by Dr. Medina, an optometrist, who prescribed Timilol at .5% strength and artificial tears to treat the increased pressure in Plaintiff's left eye.

Between March and August of 2002, Plaintiff was referred to ophthalmology two times and each time the referral was denied by an unidentified employee of the CSATF medical staff.  During this period, the pressure in Plaintiff's left eye continued to steadily increase.

On September 16, 2002, Dr. Deere wrote Plaintiff a referral to ophthalmology, but the referral was denied by CSATF medical staff.

 On July 30, 2003, Dr. Gonzales again referred Plaintiff to ophthalmology.

On October 8, 2003, Defendant Garcia, an optometrist, examined Plaintiff and noted the pressure in his left eye was 30.  Defendant Garcia informed Plaintiff that his eye drop medication should be increased in strength and referred Plaintiff to ophthalmology.  The change in the eye drop medication was never prescribed.

On October 10, 2003, Plaintiff was scheduled to see Dr. Kazi, an ophthalmologist, but the doctor was unable to examine Plaintiff because he was scheduled at the same time as five other inmates.  Plaintiff's ophthalmology consultation was rescheduled for January 9, 2004, but Plaintiff had the flu and was unable to travel to his ophthalmology referral.  The referral was rescheduled for February 13, 2004.

On February 13, 2004, the day of Plaintiff's appointment, guards refused to inform Plaintiff where they were taking him.  Plaintiff was unaware that his ophthalmology consultation had been rescheduled and he refused to go with the guards absent information of where he was travelling.

On March 26, 2004, Dr. Wu examined Plaintiff and referred him for a routine ophthalmology appointment. The referral was approved, but Plaintiff was never examined by an ophthalmologist.

On August 4, 2004, Plaintiff requested an ophthalmology referral due to pain and blurriness in his left eye.  Defendant Wu denied the request and referred Plaintiff to optometry.

On August 25, 2004, Plaintiff was examined by Defendant Garcia, who noted that the pressure in Plaintiff's left eye had risen to 32 and pressure in his right eye was 22.  Defendant Garcia again informed Plaintiff that his eye drop medication should be increased in strength and referred him for routine ophthalmology.  The change in the eye drop medication was never prescribed.

On or around October 18, 2004, both Defendants Bhatt and Wu denied Plaintiff's request for an ophthalmology consultation with full knowledge of the increased pressure in Plaintiff's left eye.

On January 1, 2005, with knowledge that the pressure was increasing in Plaintiff's eye, Defendant Wu denied Plaintiff's medical requests for an ophthalmology referral.  On February 11 and

3

March 9, 2005 Plaintiff requested an ophthalmology referral but his requests were denied by an unidentified employee of the CSATF medical staff.

On or around April 27, 2005, with knowledge of the increasing pressure in Plaintiff's eye and absent an ophthalmologist consultation, Defendant Wu reduced the strength of Timilol from .5% to .25%.

On May 22, 2005, Plaintiff submitted a request to see an ophthalmologist due to severe pain and a dramatic loss of vision in his left eye.  Plaintiff's request was denied by an unidentified employee of the CSATF medical staff.

On May 26 and June 2, 2005, Plaintiff submitted medical requests for renewal of his eye drop medication, noting that his prescription expired June 7, 2005.  Plaintiff's eye drop medication was not renewed.  Plaintiff was informed by a nurse that he would have to submit a refill slip in order to renew his medication.  On June 10, June 17, and again on June 23, 2005, Plaintiff submitted refill slip requests, but his eye drop medication was not renewed.

On or around June 28, 2005, Plaintiff spoke with Defendant Jeffreys and conveyed his concern about going so long without his eye drop medication.  Plaintiff told Defendant Jeffreys that he suffered severe pain from the increased pressure in his left eye and he feared going blind.  Defendant Jeffreys told Plaintiff to bring his refill request slip to the medical window by noon and he would personally take care of the prescription refill.  Plaintiff did as suggested, but the medication was not refilled.

On or around July 5, 2005, Plaintiff submitted another refill request to no avail.  On July 8, 2005, Plaintiff submitted yet another refill request. This time, Plaintiff spoke with Defendant Jimenez and informed him that he had glaucoma, the pressure in his eye had been steadily increasing, he suffered great pain in his eye from this pressure, and he feared going blind because of the increased pressure.  Defendant Jimenez assured Plaintiff that he would handle his refill request personally.  This assurance was given again on July 11, July 14, and July 18, 2005, but Plaintiff's eye drop medication was not refilled.

On July 21, 2005, Plaintiff submitted a grievance due to the failure to renew his eye drop medication.  On August 5, 2005, Plaintiff was informed via appeal process that his eye drop medication would not be renewed without a physician's order and it was suggested that he visit the

4

RN sick call window.  On August 11, 2005, Plaintiff submitted another grievance noting that he was informed by the RN sick call window that if he wanted medications renewed, Plaintiff would have to put in a sick call or submit a refill slip.  Plaintiff had already tried both recommended actions.  In addition, Plaintiff was told that the medical staff was too busy to see him unless it was an emergency.

On August 12, 2005, Plaintiff's eye drop medication was finally renewed by Defendant Bhatt.  Plaintiff was without his medication for three months and was forced to initiate an appeal process in order to receive said medication.

On February 7, 2006, Plaintiff was examined by Dr. Medina who noted that the pressure in Plaintiff's left eye had increased to 38.  Dr. Medina wrote a referral to ophthalmology.  Both Defendants Wu and McGuiness denied the request for a referral to ophthalmology.

On February 8, 2006, Plaintiff was examined by Defendant Nguyen who refused to refer Plaintiff to ophthalmology despite the increased pressure in Plaintiff's eye.  Plaintiff informed Defendant Nguyen that the increased pressure in his eye was very painful and that he feared going blind.  Plaintiff was told by Defendant Nguyen that his eye drop medication would be renewed but he would not be referred to ophthalmology.  Plaintiff's eye drop medication was not renewed.

On February 28, 2006, Plaintiff appealed Defendant Nguyen's treatment and his refusal to refer Plaintiff to ophthalmology.  Plaintiff also requested renewal of his eye drop medications.  On March 20, 2006, Plaintiff was seen by Dr. Greene who submitted a renewal request for the eye drop medication.  On April 28 and May 1, 2006, Plaintiff's prescription for Timilol was renewed and dispensed at a continued .25% strength.

On or around May 5, 2006, Plaintiff awoke to a severe loss of vision and extreme pain in his left eye.  On or around May 22, 2006, Plaintiff submitted a medical request for an emergency ophthalmology consultation.  Defendant McGuiness, with full knowledge of the increased pressure in Plaintiff's eye and the severe pain he was suffering, denied the ophthalmology request.

On May 25, 2006, Plaintiff was examined by Dr. Salmi.  Dr. Salmi, recognizing a cause for concern due to the increased pressure in Plaintiff's eye, wrote an urgent referral to ophthalmology.  Defendant McGuiness denied the referral.

On July 27, and again on August 18, 2006, Plaintiff was seen by Dr. Salmi who referred Plaintiff for an urgent ophthalmology consult.  Each time, Defendant McGuiness denied the referral request.

On or around September 10, 2006, Plaintiff awoke to severe pain and approximately 80% loss of vision in his left eye.  Plaintiff immediately alerted medical staff of his condition.

On September 15, 2006, Plaintiff was taken for an emergency ophthalmology consultation with Dr. Yaplee.  After examining Plaintiff, Dr. Yaplee informed Plaintiff that he had irreparable nerve damage caused by increased pressure build-up in his left eye.  Dr. Yaplee further stated that the loss of vision was caused by the increased pressure in Plaintiff's left eye.  Dr. Yaplee prescribed Plaintiff Timilol at .5% strength and Xalatan at .5% strength and recommended a laser procedure to repair nerve damage.

On November 13, 2006, Plaintiff was examined by Dr. Salmi who referred Plaintiff for an urgent ophthalmology follow-up with Dr. Yaplee.  On December 8, 2006, after continuous use of both eye drop medications, the pressure in Plaintiff's eye had dropped to 18.  On or around April 10, 2007, Plaintiff was examined by an optometrist who noted that after use of proper medications the pressure in Plaintiff's left eye had reduced to 18.  On or around September 11, 2007, Plaintiff was examined again and the pressure in his left eye was 18.

On November 14, 2008, Dr. Yaplee performed a laser procedure in an attempt to repair the nerve damage in the left eye, but there was no beneficial effect.

On or around March 19, 2010, Plaintiff was examined by Dr. Rachid, an ophthalmologist, whom recommended continued usage of both eye drop medications as well as a laser surgery to correct nerve damage in Plaintiff's left eye.  On or around April 28, 2010, Dr. Rachid performed the laser surgery with no beneficial effect.  Following the surgery, Plaintiff was in severe agony and pain for approximately one month.  During a follow-up consultation with Dr. Rachid, the doctor informed Plaintiff that there was too much nerve damage to Plaintiff's left eye and that he would never regain vision in his eye.

As of the filing of the complaint, Plaintiff continued to take Timilol at .5% strength and Xalatan at .5% strength for his glaucoma condition.  Plaintiff alleges that he continues to and will continue to suffer from blindness, headaches, and constant irritation in his left eye.

### B.  Motion to Dismiss Legal Standard

A motion to dismiss for failure to state a claim is properly granted where the complaint lacks "a cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988)).  While accepting factual allegations in the complaint as true, the court is not required to accept legal conclusions as true, and the factual allegations must state a plausible claim for relief.  Maya v. Centex Corp., 658 F.3d 1060, 1067-68 (9th Cir. 2011).

In considering a motion to dismiss for failure to state a claim, the court generally considers only the contents of the complaint and accepts as true the facts alleged in the complaint.  Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Shaver v. Operating Engineers Local 428 Pension Trust Fund, 332 F.3d 1198, 1201, 1203 (9th Cir. 2002).  Additionally, the court construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  Id.

### C.  Discussion

Defendant Jeffrey Garcia, O.D., an optometrist, moves to dismiss the second amended complaint against him for failure to state a claim upon which relief can be granted.  Defendant Garcia contends that (1) as an optometrist, he could not lawfully render treatment for glaucoma; (2) the complaint against him is barred by the statute of limitations; and (3) Plaintiff fails to plead that Defendant Garcia caused him harm.

#### 1.  Treatment for Glaucoma

Defendant Garcia argues that Plaintiff has failed to state a claim against him because, as an optometrist, he could not legally render treatment to Plaintiff for glaucoma.  Defendant Garcia therefore requests that the Court consider evidentiary materials outside the pleadings, such as regulations and Defendant Garcia's Board of Optometry license.  (ECF No. 68.)  If a district court

relies on materials outside the pleadings, the court must convert the motion to dismiss for failure to state a claim into a motion for summary judgment and must give the non-moving party notice and an opportunity to present material in opposition. Fed. R. Civ. P. 12(b)(6), and 56; Anderson v. Angelone, 86 F.3d 932, 934-35 (9th Cir. 1996). Here, the Court declines to consider matters outside the pleadings in ruling on Defendant Garcia's motion to dismiss and makes no determination regarding Defendant Garcia's ability to render treatment for glaucoma during the relevant time period. As such, Defendant Garcia's request for judicial notice is DENIED. As discussed more fully below, Defendant Garcia's motion to dismiss may be decided solely on the pleadings in this matter.

    2.  <u>Statute of Limitations</u>

As section 1983 contains no specific statute of limitations, federal courts borrow state statutes of limitations for personal injury actions in § 1983 suits. See Wallace v. Kato, 549 U.S. 384, 387 (2007); Lukovsky v. City of San Francisco, 535 F.3d 1044, 1048 (9th Cir.2008). Federal courts should also borrow all applicable provisions for tolling the limitations period found in state law. Wallace, 549 U.S. at 387.

California's statute of limitations for an action for a personal injury caused by the wrongful or negligent act of another is two years from the date of accrual. Cal. Civ. Proc. Code § 335.1. As previously determined by this Court, California's statute of limitations may be tolled up to two years for a prisoner's monetary damage claims.[1] Id. § 352.1. Thus, Plaintiff's claims must have accrued within the four years preceding April 23, 2009, the date this lawsuit was filed.[2] Federal law determines when a cause of action accrues and the statute of limitations begins to run for a § 1983 claim. Lukovsky, 535 F.3d at 1048. A federal claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. Id. at 1051.

///

///

---

[1]    Although Defendant Garcia believes the tolling period cannot extend the statute limitations beyond three years, Defendant Garcia accepts the Court's four-year period in his reply papers. (ECF No. 84, p. 3.)

[2]    On December 10, 2013, the Court adopted an effective filing date of April 23, 2009. (ECF No. 96, pp. 2-3.) Although Defendant Garcia asserts that the claims against him do not relate back to the original complaint, he accepts the April 2009 filing date in his reply papers. (ECF No. 84, pp. 3, 4.)

In the second amended complaint, Plaintiff makes the following allegations against Dr. Garcia:

On October 8, 2003, Defendant Garcia, an optometrist, examined Plaintiff and noted the pressure in his left eye was 30. Defendant Garcia informed Plaintiff that his eye drop medication should be increased in strength and referred Plaintiff to ophthalmology. The change in the eye drop medication was never prescribed.

. . .

On August 4, 2004 Plaintiff requested an ophthalmology referral due to pain and blurriness in his left eye.  Defendant Wu denied the request and referred Plaintiff to optometry.  On August 25, 2004 Plaintiff was examined by Defendant Garcia, whom noted that the pressure in Plaintiff's left eye had risen to 32 and pressure in his right eye was 22. Defendant Garcia again informed Plaintiff that his eye drop medication should be increased in strength and referred him for a routine ophthalmology. The change in the eye drop medication was never prescribed. On or around October 18, 2004, both Defendants Bhatt and Wu denied Plaintiff's request for an ophthalmology consultation with full knowledge of the increased pressure in Plaintiff's left eye.

(ECF No. 33, ¶¶ 22, 26.)

<u>October 8, 2003 Examination</u>

According to Plaintiff's allegations, his claims against Dr. Garcia arising from the 2003 examination accrued on August 4, 2004, after Plaintiff failed to receive the prescription for his eye drop medication and he requested another ophthalmology referral due to pain and blurriness in his left eye.  At that point, Plaintiff knew or had reason to know of the injury because the alteration of his medications caused him "pain and blurriness" and prompted another request for referral.  <u>Lukovsky</u>, 535 F.3d at 1051.  Based on the August 4, 2004 date of accrual, the Court finds that the statute of limitations ran on Plaintiff's claim arising from the October 2003 examination on August 4, 2008, well before Plaintiff initiated this action on April 23, 2009.

<u>August 25, 2004 Examination</u>

According to Plaintiff's allegations, his claims against Dr. Garcia arising from the August 25, 2004 examination regarding the failure to receive an increased eye drop medication prescription and ophthalmology referral accrued on October 18, 2004, when his request for an ophthalmology examination was denied by Defendants Bhatt and Wu despite increasing pressure in Plaintiff's left eye.  At that point, Plaintiff knew or had reason to know of the injury because he had not received a prescription, his request for referral was denied and he was experiencing increased eye pressure.

Lukovsky, 535 F.3d at 1051.  Based on the October 18, 2004 date of accrual, the Court finds that the statute of limitations ran on Plaintiff's claim arising from the August 2004 examination on October 18, 2008, well before Plaintiff filed this action on April 23, 2009.

Accordingly, the Court finds that Plaintiff's claims against Defendant Garcia are barred by the statute of limitations and should be dismissed.  Given this finding, the Court finds it unnecessary to address Defendant Garcia's remaining argument regarding causation.

**IV.   Conclusion and Recommendation**

For the reasons stated, IT IS HEREBY ORDERED that Defendant Garcia's motion to dismiss, filed on May 30, 2013, is DENIED as moot.

Further, the Court HEREBY RECOMMENDS that Defendant Garcia's amended motion to dismiss, filed on August 2, 2013, be GRANTED, and that Plaintiff's claims against Defendant Garcia be dismissed from this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir.1991).


IT IS SO ORDERED.

Dated:   **March 31, 2014**                  /s/ Barbara A. McAuliffe
                                        UNITED STATES MAGISTRATE JUDGE

10