# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY CRAIG HUCKABEE,<br><br>    Plaintiff,<br><br>    v.<br><br>MEDICAL STAFF AT CSATF,<br><br>    Defendants. | Case No. 1:09-cv-00749-DAD-BAM (PC)<br><br>ORDER GRANTING REQUEST FOR SCREENING<br><br>(ECF No. 194)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>(ECF No. 193) |

**<u>Findings and Recommendations</u>**

**I.     Procedural History**

    Plaintiff Anthony Craig Huckabee ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. Plaintiff initiated this action on April 28, 2009. (ECF No. 1.) On August 21, 2012, Plaintiff, through then-appointed counsel, filed a second amend complaint. (ECF Nos. 18, 31, 33.) Thereafter, the Court directed service of the second amended complaint.

    On December 3, 2012, Defendants Diaz, Bhatt and Nguyen moved for dismissal of Plaintiff's complaint for failure to state a claim. (ECF No. 39.)

1

1   On May 30, 2013, Defendant Garcia filed a motion to dismiss without leave to amend.
2   (ECF No. 52.)
3   On July 26, 2013, the Court granted Plaintiff's counsel's motion to withdraw and
4   substituted Plaintiff in pro per. (ECF No. 64.)
5   On August 2, 2013, Defendant Garcia filed an amended motion to dismiss, along with a
6   request for judicial notice. (ECF No. 67.)
7   On December 9, 2013, Defendant Jeffreys filed a motion to dismiss. (ECF No. 95.)
8   On December 10, 2013, the Court partially granted the motion to dismiss filed by
9   Defendants Diaz, Bhatt and Nguyen. Specifically, the Court dismissed Defendant Diaz from this
10  action, along with Plaintiff's state law causes of action for negligence, medical malpractice,
11  negligent infliction of emotional distress, and violation of the Unruh Civil Rights Act. The Court
12  also dismissed (1) Plaintiff's claims against Defendant Nguyen regarding events occurring in
13  2000 as barred by the statute of limitations, (2) Plaintiff's claims against Defendant Wu regarding
14  events occurring prior to April 23, 2005, as barred by the statute of limitations, and (6) Plaintiff's
15  claims against Defendant Bhatt as barred by the statute of limitations. (ECF No. 96.)
16  On December 26, 2013, Defendants Nguyen and Wu answered the second amended
17  complaint. (ECF No. 102.)
18  On March 27, 2014, Defendant McGuinness answered the second amended complaint.
19  (ECF No. 135.)
20  On May 19, 2014, the Court granted Defendant Garcia's amended motion to dismiss. The
21  claims against Defendant Garcia were dismissed from this action and judgment was entered in
22  Defendant Garcia's favor. (ECF Nos. 148, 149.)
23  On July 9, 2014, Plaintiff lodged a third amended complaint. (ECF No. 158.) On July 16,
24  2014, Plaintiff filed a notice of errata, which identified several typographical errors in the third
25  amended complaint. (ECF No. 159.) Defendants Jeffreys, McGuinness, Nguyen and Wu filed a
26  statement of non-opposition to the filing of a third amended complaint. (ECF No. 160.) On July
27  21, 2014, the Court granted Plaintiff leave to file a third amended complaint, but because of the
28  notice of errata, required Plaintiff to re-file the complaint as a complete document. (ECF No.

162.)

On August 14, 2014, Plaintiff filed a third amended complaint. (ECF No. 165.) On September 5, 2014, Defendants RN Jeffreys, Dr. McGuiness, Dr. Nguyen, and Dr. Wu filed a request for the screening of Plaintiff's third amended complaint. (ECF No. 167.) On May 26, 2015, the Court granted Defendants' request for screening, and issued an order requiring Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed only his cognizable claims. (ECF No. 174.)

On July 20, 2015, Plaintiff filed a fourth amended complaint. (ECF No. 183.) On May 2, 2016, before the Court could screen Plaintiff's fourth amended complaint, Plaintiff filed a motion to amend his fourth amended complaint (ECF No. 188), and lodged a fifth amended complaint (ECF No. 193). On November 22, 2016, the Court granted Plaintiff's motion to amend, and directed the Clerk of the Court to file Plaintiff's fifth amended complaint. (ECF No. 192.)

**II.    Request for Screening**

On December 19, 2016, Defendants Wu, Jeffreys, McGuinness and Nguyen filed a request for screening of the fifth amended complaint pursuant to 28 U.S.C. § 1915A(a). (ECF No. 194.) Defendants' request is HEREBY GRANTED, and Plaintiff's fifth amended complaint, filed on May 2, 2016, is currently before the Court for screening.

**III.    Screening Requirement and Standards**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); *Id.* § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

3

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**IV.     Plaintiff's Allegations**

Plaintiff is currently housed at Correctional Training Facility in Soledad, California. The events in the fifth amended complaint are alleged to have occurred at the California Substance Abuse Treatment Facility ("CSATF"). Plaintiff names the following defendants:  (1) Dr. McGuinness, Chief Medical Officer; (2) Dr. Enenmoh, Chief Medical Officer; (3) Dr. Flores, Chief Medical Officer; (3) Dr. Wu, Primary Care Provider; (4) Dr. Nguyen, Primary Care Provider; (5) RN Jimenez; (6) RN Jeffreys; and (7) Frank Williams, Chief Pharmacist. Plaintiff is suing Defendants in their individual capacities.

Plaintiff alleges that he was housed at CSATF from 2000 to 2012. While there, he was diagnosed with Open Angle Glaucoma ("OAG") and placed on a treatment program. Plaintiff asserts that OAG is a serious medical condition that, if left undiagnosed and treated, would lead to blindness. Plaintiff further alleges that none of the Defendants are eye specialists or equipped to handle Plaintiff's OAG, so they repeatedly required and requested services from eye specialists. Defendants allegedly denied or delayed the necessary treatment for Plaintiff on a regular basis, without consulting specialists or documenting the reasons for their alleged deviations from standard procedure.

4

From October 19, 2000, to February 7, 2006, Plaintiff states that the pressure in his left eye degenerated from a stable pressure of 17 to a critical 38. He lost his eyesight on September 15, 2006. He subsequently had several eye surgeries, but on April 28, 2010, he was diagnosed with "uncontrolled glaucoma," which required further surgery. On May 4, 2010, Plaintiff's eye pressure rose to 50,[1] which required emergency surgery that was delayed.

Plaintiff alleges that all Defendants had access to his medical file, were aware of his OAG, and were involved in providing treatment. Despite their knowledge of his medical needs, they allegedly denied and delayed his medical treatment on a repeated basis for long periods of time, the end result being permanent damage to his left eye and severe damage to his right eye, both of which are irreparable.

On August 25, 2004, the pressure in Plaintiff's eyes had risen to 32 in his left eye and 22 in his right eye. The contract optometrist referred Plaintiff to an ophthalmologist, but Defendant Wu allegedly did not process the Request for Services, despite knowledge of the rise in pressure.

On December 21, 2004, without consultation from an ophthalmologist, Defendant Wu reduced Plaintiff's prescribed OAG medication, Timilol, from original strength of .5% to .25%. Plaintiff contends that the pressure in his eyes had not dropped to a safe level to justify such a change. Since June of 2000, Plaintiff had been receiving Timilol at .5% strength. All succeeding PCP's followed Defendant Wu's lead and continued to prescribe the lower dosage until September 15, 2006, when Plaintiff lost vision in his left eye. The attending ophthalmologist raised the strength of Timilol from .25% back to the original .5%.

On February 11, 2005, Plaintiff requested to see an eye specialist because his eye condition was worsening.

On March 9, 2005, Defendant Wu submitted a physician Request for Services for an ophthalmologist. The first request was denied, and it is unclear whether a second request was submitted.

On May 23, 2005, Plaintiff requested renewal of his Glaucoma medication, which was

---

[1] Whether Plaintiff is still referring to his left eye at this point is unclear.

scheduled to expire on June 7, 2005. Plaintiff again requested renewal on June 8 and July 12, 2005, but the medication was not renewed until August 12, 2005.

On June 28, 2005, Plaintiff spoke with Defendant Jeffreys and conveyed his concern about going so long without his glaucoma medication. Plaintiff informed Defendant Jeffreys that he suffered from increased pressure in his left eye and feared going blind. Defendant Jeffreys told Plaintiff to bring his medical request to the clinic window and he would personally take care of the prescription refill. The next day, Plaintiff followed Defendant Jeffrey's instructions, but the medication was not refilled.

On July 12, 2005, Plaintiff submitted another refill request and spoke with Defendant Jimenez. Plaintiff informed Defendant Jimenez that he suffered from glaucoma, the pressure in his left eye had been steadily increasing, he suffered pain from the pressure and he feared going blind. Defendant Jimenez assured Plaintiff that he would personally handle the refill request. This assurance was given again on July 14 and July 18, 2005, but Plaintiff's glaucoma medication was not refilled.

On July 21, 2005, Plaintiff submitted an inmate grievance complaining about not receiving his glaucoma medication.

On August 5, 2005, Plaintiff was informed, via the appeal responses, that his medication would not be renewed without a physician's order, and it was suggested that he visit the clinic's sick call window.

On August 11, 2005, Plaintiff submitted another grievance noting that he was informed at the sick call window that, if he wanted his medication renewed, he would have to submit a sick call or refill request, which Plaintiff had been doing for months. Additionally, Plaintiff was told that the medical staff was too busy to see him unless it was an emergency.

On August 12, 2005, Plaintiff's medication was renewed. Plaintiff alleges that Defendant McGuiness was aware of this two-month delay, and that her response to Plaintiff's appeal expressed indifference to Plaintiff's worsening eye conditions.

On January 27, 2006, Plaintiff informed medical staff that he had not seen a physician or primary care provider for six months. He was not scheduled to see a primary care provider until

6

1   March 27, 2006.

2   On February 7, 2006, Plaintiff was seen by a contract optometrist. The optometrist noted
3   that Plaintiff's left eye pressure had risen to 38.

4   On February 8, 2006, Plaintiff was seen by Defendant Nguyen, who refused to submit a
5   Request for Services, despite his awareness of the elevated pressure and painful condition.
6   Defendant Nguyen informed Plaintiff that he would renew his glaucoma medication. Plaintiff's
7   medication was renewed on April 28 and May 1, 2006, but not by Defendant Nguyen.

8   On February 28, 2006, Plaintiff appealed Defendant Nguyen's treatment, including his
9   refusal to refer Plaintiff to an ophthalmologist and to order a refill of the medication. Plaintiff
10  went two months without his prescribed glaucoma medications, and had to file a grievance to
11  receive a prescription. Plaintiff alleges that Defendant McGuinness was aware of the two-month
12  delay, and that her response to the grievance expressed indifference to the violation of inmate
13  medical services policies and procedures.

14  On May 22, 2006, after going without his prescribed glaucoma medication for over two
15  months, Plaintiff submitted a medical Request for Services, seeking emergency treatment because
16  of extreme pain and loss of vision in his left eye.

17  On May 25, 2006, Dr. Salmi submitted an urgent Request for Services for an
18  ophthalmology consultation. Defendant McGuinness approved the request on May 30, 2006, but
19  failed to ensure that Plaintiff was scheduled or seen by the specialist within the fourteen-day limit
20  prescribed by policies and procedures. Defendant McGuinness received notice of this violation by
21  June 21, 2006. Plaintiff was seen three and one-half months later.

22  On June 21, 2006, Defendant McGuinness responded to Plaintiff's grievance of February
23  28, 2006. At the second level review, Defendant McGuinness admitted that an urgent Request for
24  Services was submitted on May 25, 2006. Defendant McGuinness allegedly was fully aware that
25  Plaintiff's rights were being violated for failure to comply with policies and procedures, and she
26  made no effort to correct the violations.

27  On July 21 and 27, and again on August 18, 2006, Plaintiff was seen by Dr. Salmi. Dr.
28  Salmi noted that Plaintiff had not been seen by the ophthalmologist for glaucoma, and that he had

left messages for the request to be processed. Plaintiff alleges that Defendant McGuinness failed to ensure that Plaintiff was scheduled to be seen within fourteen days.

On September 10, 2006, Plaintiff alerted medical staff of approximately 80% vision loss in his left eye and severe pain. Five days later, Plaintiff was taken for an emergency consultation with Dr. Yaplee. After examining Plaintiff, Dr. Yaplee informed Plaintiff that he had severe nerve damage and loss of vision caused by increased pressure build-up in his left eye. Dr. Yaplee prescribed medications at an increased strength: Timilol at .5% and Xalatan at .5%. Dr. Yaplee also recommended a laser procedure within one month to repair the nerve damage in Plaintiff's left eye.

On October 3, 2006, Dr. Salmi submitted a Request for Services to comply with the recommended laser procedure.

On October 9, 2006, Defendant Flores approved the request, but Plaintiff was not seen until February 16, 2007, by a contract doctor who did not perform the surgery. Defendant Flores allegedly failed to ensure that Plaintiff was scheduled or seen for surgery.

On November 7, 2006, Plaintiff was examined again by Dr. Salmi, who submitted an urgent Request for Services to see the ophthalmologist. Defendant Flores approved the request, but Plaintiff was not seen until December 8, 2006. At that examination, Dr. Yaplee requested that Plaintiff be returned within four months for an argon laser procedure to the left eye. Plaintiff contends that Defendant Flores failed to ensure that Plaintiff was scheduled or seen within the guidelines for urgent referrals. Plaintiff was not returned for the recommended surgery until two years later on November 14, 2008. This was accomplished through an urgent Request for Services submitted by Dr. Safinski on October 30, 2008. Defendant Enenmoh approved the request the following day, and fourteen days later, Plaintiff received the recommended laser surgery.

On July 31, 2007, Plaintiff states he was compelled to submit a grievance to accomplish the laser surgery.

On April 4, 2008, Defendant Enenmoh responded to Plaintiff's July 31, 2007 grievance, stating that there was no documentation from Dr. Yaplee or any other doctor recommending the

laser surgery. Plaintiff alleges that Defendant Enenmoh was familiar with Plaintiff's health record, which held copies of Dr. Yaplee's recommendations, but that Defendant Enenmoh expressed indifference to Plaintiff's medical needs, resulting in delayed treatment and increased pain and suffering.

On January 8, 2008, Plaintiff states he was again compelled to submit a grievance because he had not been receiving his prescribed OAG medication in a timely manner, going for months without it. The grievance was granted and procedures for issuing medications were renewed. Plaintiff states that it took him over eighty days to get his medication, and that he had to utilize the inmate grievance procedure to do so, which allegedly violates procedures for issuing medication. Plaintiff states that these medications had been prescribed eight years earlier, but alleges that Defendants Jeffreys, Jimenez, Nguyen, Wu, and Williams had not been following procedures for issuing medications.

On January 27, 2008, Plaintiff submitted a grievance regarding the substitution of his originally prescribed Xalatan for a less effective concentration of Timilol; that his OAG refill orders were delayed for months; and that medical staff was responding with indifference to his medical condition. The first response to his grievance took seven months, while the second level review took six months to respond. Defendant Enenmoh reviewed the allegations and concluded that no procedures had been violated. Plaintiff alleges that Defendant Enenmoh denied any wrongdoing because he was implicated in this matter.

On December 17, 2009, Dr. Metts submitted an urgent Request for Services for Plaintiff to see Dr. Rasheed, ophthalmologist. The Request for Services noted that another primary care provider two months earlier had recommended evaluation by a specialist for possibly surgery due to "increasing glaucoma." Dr. Metts stated that this urgent matter should be attended to within fourteen days. Plaintiff was not seen until two months later.

On February 2, 2010, Plaintiff was seen by Dr. Rasheed again, who found "Advanced Glaucoma."

On March 19, 2010, Plaintiff again was seen by Dr. Rasheed, who recommended surgery for a cataract in the left eye.

On April 28, 2010, Dr. Rasheed performed the surgery with no beneficial effect. During a follow-up consultation, Dr. Rasheed informed Plaintiff that there was too much nerve damage to his left eye, and that he would never regain his vision.

On May 4, 2010, another urgent Request for Services was submitted for Plaintiff to be seen within two day for surgery to reduce the pressure in his left eye, which had risen to 50. Plaintiff was not seen until May 12, 2010.

On July 9, 2010, Plaintiff's OAG medication was still being delayed or denied. Plaintiff states that the prescription renewals had been promised to be automatic since January of 2008. However, Defendant Williams, the chief pharmacist, allegedly refused to follow procedures implementing a system of automatic refills for prescription medications.

On September 15, 2011, Plaintiff states he was still not being scheduled for regular ninety-day visits with the specialist, as required by procedures. Plaintiff further states that Defendant Enenmoh was the chief medical officer at the time, and alleges that it was his responsibility to track all specialist referrals, to do a quarterly review of the specialty referral tracking log, and to ensure that consultations are completed within the required timeframes.

As of the filing of this amended complaint, Plaintiff continues to receive treatment for his OAG.

Plaintiff asserts causes of action for deliberate indifference to serious medical needs in violation of the Eighth Amendment, a state law cause of action for intentional infliction of emotional distress, and discusses the continuing violations doctrine. Plaintiff seeks compensatory, punitive, and exemplary damages.

**V.     Discussion**

   **a.  Linkage Requirement**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff alleges that Defendant Williams, the chief pharmacist, refused to follow procedures regarding the implementation of a system for automatic refills of prescription medications. This is the only allegation Plaintiff makes against Defendant Williams, and as such, fails to establish a direct link between Defendant Williams' actions and Plaintiff's alleged constitutional deprivations. To the extent Plaintiff seeks to hold Defendant Williams liable based upon his supervisory position, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1030, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotation marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

Defendant Williams cannot be held liable for a § 1983 violation merely because he is the chief pharmacist. Plaintiff must link Defendant Williams either by direct conduct in the

constitutional violation, or by identifying a policy that Defendant Williams implemented that was so deficient that the policy itself is a repudiation of Plaintiff's rights. Plaintiff established no such link here. Accordingly, Plaintiff has failed to state a cognizable claim against Defendant Williams.

### b. Eighth Amendment – Deliberate Indifference to Serious Medical Needs

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S at 837). "Deliberate indifference is a high legal standard," *Simmons v. Navajo County Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm, *Jett*, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980), citing *Estelle*, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate

12

indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

<u>Defendants Wu, McGuinness, Enenmoh, Jimenez and Jeffreys</u>

At the pleading stage, the Court finds that Plaintiff has stated a claim for deliberate indifference to serious medical needs against Defendants Wu, McGuinness, Enenmoh, Jimenez and Jeffreys.

<u>Defendant Dr. Nguyen</u>

Plaintiff alleges that Defendant Nguyen refused, in February 2006, to refer Plaintiff to an ophthalmologist in response to the recommendation from an optometrist. On the same date, Defendant Nguyen agreed to renew Plaintiff's glaucoma medication, but the medication was not renewed until April 28, 2006 by a different physician.

With regard to the referral, Plaintiff has at best alleged a disagreement between medical providers related to the appropriate course of treatment. "A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), *overruled in part on other grounds in Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)).

As for Defendant Nguyen's alleged failure to renew the medication, Plaintiff's fifth amended complaint omits facts linking Defendant Nguyen to that failure.

<u>Defendant Dr. Flores</u>

Plaintiff alleges that Defendant Flores approved Requests for Services in October 2006 and November 2006, but failed to ensure that Plaintiff was scheduled or seen within the relevant recommendation period or guidelines for urgent referrals. The Court finds that Plaintiff's allegations are not sufficient to state a cognizable deliberate indifference claim against Defendant Flores. Nothing indicates that Defendant Flores was responsible for scheduling or confirming

appointments following his approval of Requests for Services. Indeed, Plaintiff's cited prison regulations indicate that the primary care provider is responsible for following up with the patient until the specialist appointment occurs. (ECF No. 193, p. 24, ¶ 51.)

### c. Intentional Infliction of Emotional Distress

Plaintiff alleges a state law claim of intentional infliction of emotional distress.[2] The Court previously dismissed Plaintiff's state law claims, including his claim of negligent infliction of emotional distress, for failure to allege compliance with the claim presentation requirement of California's Government Claims Act ("GCA"). As with Plaintiff's second and third amended complaints, Plaintiff again fails to allege compliance with the GCA's claim presentation requirement.

The GCA requires that a party seeking to recover money damages from a public entity or its employees must present a claim to the California Victim Compensation and Government Claims Board before filing suit in court, generally no later than six months after the cause of action accrues. *See* Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Timely claim presentation is not merely a procedural requirement of the GCA, but is an element of a plaintiff's cause of action. *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007). Thus, when a plaintiff asserts a claim subject to the GCA, he must affirmatively allege compliance with the claim presentation procedure, or circumstances excusing such compliance, in his complaint. *Id*. This requirement applies in federal court. *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir.1988).

Plaintiff's fifth amended complaint does not allege that he has complied with, or should be excused from complying with, the claim presentation requirement. Therefore, Plaintiff may not proceed on his state law claim for intentional infliction of emotional distress.

### d. Continuing Violations Doctrine

Under the continuing violations doctrine, Plaintiff alleges systemic violations of the

---

[2] Plaintiff cites 42 U.S.C. § 1997e(e) in conjunction with this claim, which requires prisoner complaints claiming emotional injuries to provide proof of a prior physical injury or sexual act. However, for the reasons discussed, Plaintiff's state law claim for emotional injuries fails on other grounds.

14

California Correctional Health Care Services Inmate Medical Services Policies & Procedures. Plaintiff also cites various unnamed federal court rulings from approximately 1995 to 2014 that have purportedly found systemic violations of constitutional rights in California's prison medical system.

The continuing violations doctrine extends the accrual of a claim for purposes of the statute of limitations. *See Douglas v. California Dep't. of Youth Authority*, 271 F.3d 812, 822 (9th Cir. 2001) (citing *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982)). The continuing violations doctrine is not a cause of action, but rather is an equitable doctrine designed "to prevent a defendant from using its earlier illegal conduct to avoid liability for later illegal conduct of the same sort." *O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000); *see also Bruce v. Woodford*, No. 1:07-cv-00269-BAM PC, 2012 WL 1424166, at *6 (E.D. Cal. Apr. 24, 2012). Statute of limitations issues need not be addressed at this stage of the proceedings, as the statute of limitations is an affirmative defense to be raised by the defendants. *See Solomon v. C/O I. Castaneda*, No. 1:15-cv-01801-RRB, 2016 WL 4179693, at *6 (E.D. Cal. Aug. 8, 2016) (noting, at screening stage, that the statute of limitations is an affirmative defense to be raised by defendants); *Jones v. Wong*, No. 2:15-cv-0734 AC P, 2016 WL 1704361, at *3 (E.D. Cal. Apr. 28, 2016) ("The statute of limitations is an affirmative defense, not a pleading requirement.").

**IV.   Conclusions and Recommendations**

Plaintiff's complaint states a cognizable claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment against Defendants Wu, McGuiness, Enenmoh, Jeffreys, and Jimenez in their individual capacities. His complaint otherwise fails to state any cognizable claims. Accordingly, the Court HEREBY RECOMMENDS that:

1. This action proceed on Plaintiff's fifth amended complaint, filed May 2, 2016 (ECF No. 193), for deliberate indifference to serious medical needs in violation of the Eighth Amendment against Defendants Wu, McGuiness, Enenmoh, Jeffreys, and Jimenez; and

2. All other claims and Defendants be dismissed based on Plaintiff's failure to state

claims upon which relief may be granted.[3]

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **January 10, 2017**                    /s/ Barbara A. McAuliffe
                                                                 UNITED STATES MAGISTRATE JUDGE

---

[3] Upon adoption of these Findings and Recommendations, the Court will direct service on Defendants Dr. Enenmoh and RN Jimenez. As Defendants Dr. Wu, Dr. McGuiness and RN Jeffreys have already appeared in this action, the Court will direct them to file responsive pleadings instead.