# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY CRAIG HUCKABEE, | Case No. 1:09-cv-00749-DAD-BAM (PC) |
| Plaintiff, | ORDER DISREGARDING PLAINTIFF'S OPPOSITION TO ORDER GRANTING DEFENDANTS' JOINT MOTION TO MODIFY SCHEDULING ORDER AND DENYING PLAINTIFF'S RENEWED MOTION TO FILE SIXTH AMENDED COMPLAINT |
| v. | |
| MEDICAL STAFF AT CSATF, et al, | |
| Defendants. | (ECF No. 271) |
| | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (ECF Nos. 246, 248–251) |
| | **FOURTEEN (14) DAY DEADLINE** |

## FINDINGS AND RECOMMENDATIONS

### I.     Background

Plaintiff Anthony Craig Huckabee ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action currently proceeds on Plaintiff's fifth amended complaint against Defendants Enenmoh, Jimenez, Wu and McGuinness for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.

1

1    On December 15, 2017, Defendants Enenmoh, Jimenez, and Wu filed a motion for

2    summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing Plaintiff has failed to

3    exhaust his administrative remedies.[1]  Fed. R. Civ. P. 56(c), <u>Albino v. Baca</u>, 747 F.3d 1162, 1166

4    (9th Cir. 2014) (en banc), <u>cert. denied</u>, 135 S. Ct. 403 (2014).  (ECF No. 246.)  That motion was

5    joined by Defendant McGuinness on December 18, 2017.  (ECF No. 251.)

6    On January 2, 2018, Plaintiff filed an opposition to Defendant McGuinness' joinder in the

7    motion as untimely.[2]  (ECF No. 256.)  On January 3, 2018, Plaintiff filed his opposition to the

8    motion for summary judgment.  (ECF No. 258.)  Defendant McGuinness filed a reply on January

9    16, 2018.[3]  (ECF No. 261.)  No other replies were filed, and the motion for summary judgment is

10   deemed submitted.  Local Rule 230(l).

11   On June 8, 2018, during the pendency of the motion for summary judgment for failure to

12   exhaust administrative remedies, Defendants filed a joint motion to modify the scheduling order

13   and vacate the existing discovery and non-exhaustion dispositive motion deadlines.  (ECF No.

14   268.)  The Court granted the request on June 13, 2018, finding that a response from Plaintiff was

15   unnecessary.  (ECF No. 269.)

16   On June 20, 2018, Plaintiff filed his opposition to Defendants' motion.  (ECF No. 270.)

17   On June 28, 2018, Plaintiff filed an opposition to the Court's order granting the motion to modify

18   the scheduling order, as well as a renewed motion seeking leave to file a sixth amended

19   complaint.  (ECF No. 271.)  No opposition or response was filed by any Defendant, and

20

21   _____

[1] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  <u>See</u> <u>Woods v. Carey</u>, 684 F.3d 934 (9th Cir. 2012); <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th

22   Cir. 1988); <u>Klingele v. Eikenberry</u>, 849 F.2d 409, 411–12 (9th Cir. 1988).  (ECF No. 246-2.)

23   [2] Despite Plaintiff's objection to Defendant McGuinness' joinder, Plaintiff has identified no prejudice by the timing of the joinder, which was filed the next business day after the motion for summary judgment.  In addition, Plaintiff

24   did not request an extension of time to file his opposition to the motion for summary judgment, which was mailed one day after his opposition to Defendant McGuinness' joinder.  On these facts, the Court cannot find that the joinder

25   was untimely such that it prejudiced Plaintiff, and Defendant McGuinness will be permitted to join in the motion.

26   [3] The Court would be within its discretion to strike Defendant McGuinness' reply as untimely.  <u>See</u> <u>Leong v. Potter</u>, 347 F.3d 1117, 1125 (9th Cir. 2003) (district court did not abuse discretion by striking a late-filed supplemental

27   brief).  Nonetheless, given that no party objected to the filing on the grounds of timeliness, the Court exercises its discretion in favor of Defendant McGuinness and has considered the reply in making these findings and

28   recommendations.  <u>See</u> <u>Lutz v. Delano Union Sch. Dist.</u>, 2009 WL 2525760, *3 n. 2 (E.D. Cal. Aug. 7, 2009) ("A district court has discretion to consider an untimely opposition brief.") (citations omitted).

1  Plaintiff's filings are deemed submitted.  Local Rule 230(l).

2  **II.     Plaintiff's Opposition to Modification of the Scheduling Order and Renewed Motion to File Sixth Amended Complaint**

3

4          In his opposition and motion to amend, Plaintiff raises arguments previously addressed by

5  the Court.  Specifically, Plaintiff contends that the granting of Defendants' motion before Plaintiff

6  had the opportunity to be heard demonstrates an "appearance of unfairness," and on that basis

7  renews his motion seeking leave to file a sixth amended complaint.  (ECF No. 271.)  Plaintiff

8  generally reiterates his argument that his original motion to file a sixth amended complaint, filed

9  September 25, 2017, was timely presented, and was inappropriately denied on the basis that it

10  would cause significant prejudice and undue delay.  Plaintiff argues that since that time,

11  Defendants have repeatedly requested extensions of time and otherwise delayed this action, over

12  Plaintiff's objections.  (Id.)

13          As explained in the Court's November 7, 2017 order denying Plaintiff's motion to amend,

14  leave to amend was denied because Plaintiff's proposed amended complaint sought to revive

15  claims and defendants previously dismissed by the Court, and further amendment would be futile.

16  (ECF No. 235.)  As Plaintiff has presented no new information in his motion that would change

17  the Court's determination that further amendment at this late date would be futile, the motion is

18  denied.

19  **III.    Legal Standard**

20          **A.      Statutory Exhaustion Requirement**

21          Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action

22  shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal

23  law, by a prisoner confined in any jail, prison, or other correctional facility until such

24  administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

25          Prisoners are required to exhaust the available administrative remedies prior to filing suit.

26  Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199–1201 (9th

27  Cir. 2002) (per curiam).  If, however, a plaintiff files an amended complaint adding new claims,

28  the plaintiff may proceed on the new claims if those claims were fully exhausted before tendering

3

the amended complaint for filing.  Rhodes v. Robinson, 621 F.3d 1002 (9th Cir. 2010).  As long as those new claims are fully exhausted at the time the amended complaint is filed, it does not matter whether the new claims arose before or after the date on which the initial complaint was filed; the claims can proceed as long as they are new claims that were not alleged in the initial complaint, and are fully exhausted prior to the filing of the amended complaint.  See Cano v. Taylor, 739 F.3d 1214, 1220–21 (9th Cir. 2014) (allowing amended complaint to proceed on new claims that arose prior to the date on which the initial complaint was filed); Akhtar v. Mesa, 698 F.3d 1202, 1210 (9th Cir. 2012) (allowing amended complaint alleging new claims that arose after the initial complaint was filed).

Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion.  Jones v. Bock, 549 U.S. 199, 216 (2007); Albino, 747 F.3d at 1166.  "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at 1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.  Id.

Defendants must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy.  Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing Albino, 747 F.3d at 1172) (quotation marks omitted).  The burden then shifts to Plaintiff to show something in his particular case made the existing and generally available administrative remedies effectively unavailable to him.  Williams, 775 F.3d at 1191 (citing Albino, 747 F.3d at 1172) (quotation marks omitted).  The ultimate burden of proof on the issue of exhaustion remains with Defendants.  Id. (quotation marks omitted).

///

4

**B.    Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

**III.    Discussion**

**A.    Summary of CDCR's Administrative Review Process**

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoner complaints.  Cal. Code Regs., tit. 15 § 3084.1. Pursuant to this system, an inmate may appeal "any policy, decision, action, condition, or

omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare." Id. at § 3084.1(a).

The process is initiated by submitting a CDCR Form 602, Inmate/Parolee Appeal. Id. at § 3084.2(a). In the appeal form, prisoners must list all staff members involved and describe their involvement in the issue. Id. at § 3084.2(a)(3). If the inmate does not have the requested identifying information about the staff member, he must provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member in question. Id.

Three levels of review are involved—a first level review, a second level review and a third level review. Id. at §§ 3084.5(c)–(e), 3084.7. Bypassing a level of review may result in rejection of the appeal. Id. at § 3084.6(b)(15). Under the PLRA, a prisoner has exhausted his administrative remedies when he receives a decision at the third level. See Barry v. Ratelle, 985 F. Supp. 1235, 1237–38 (S.D. Cal. 1997).

**B.    Summary of Plaintiff's Allegations**

Plaintiff was housed at the California Substance Abuse Treatment Facility ("CSATF") from 2000 to 2012. While there, he was diagnosed with Open Angle Glaucoma ("OAG") and placed on a treatment program. Plaintiff asserts that OAG is a serious medical condition that, if left undiagnosed and treated, would lead to blindness. Plaintiff further alleges that Defendants Wu, Jimenez, and Enenmoh are not eye specialists or equipped to handle Plaintiff's OAG, so they repeatedly required and requested services from eye specialists. Defendants allegedly denied or delayed the necessary treatment for Plaintiff on a regular basis, without consulting specialists or documenting the reasons for their alleged deviations from standard procedure.

From October 19, 2000, to February 7, 2006, Plaintiff states that the pressure in his left eye degenerated from a stable pressure of 17 to a critical 38. He lost his eyesight on September 15, 2006. He subsequently had several eye surgeries, but on April 28, 2010, he was diagnosed with "uncontrolled glaucoma," which required further surgery. On May 4, 2010, Plaintiff's eye pressure rose to 50,[4] which required emergency surgery that was delayed.

---

[4] Whether Plaintiff is still referring to his left eye at this point is unclear.

Plaintiff alleges that all Defendants had access to his medical file, were aware of his OAG, and were involved in providing treatment. Despite their knowledge of his medical needs, they allegedly denied and delayed his medical treatment on a repeated basis for long periods of time, the end result being permanent damage to his left eye and severe damage to his right eye, both of which are irreparable.

On August 25, 2004, the pressure in Plaintiff's eyes had risen to 32 in his left eye and 22 in his right eye. The contract optometrist referred Plaintiff to an ophthalmologist, but Defendant Wu allegedly did not process the Request for Services, despite knowledge of the rise in pressure.

On December 21, 2004, without consultation from an ophthalmologist, Defendant Wu reduced Plaintiff's prescribed OAG medication, Timilol, from original strength of .5% to .25%. Plaintiff contends that the pressure in his eyes had not dropped to a safe level to justify such a change. Since June of 2000, Plaintiff had been receiving Timilol at .5% strength. All succeeding PCP's followed Defendant Wu's lead and continued to prescribe the lower dosage until September 15, 2006, when Plaintiff lost vision in his left eye. The attending ophthalmologist raised the strength of Timilol from .25% back to the original .5%.

On February 11, 2005, Plaintiff requested to see an eye specialist because his eye condition was worsening.

On March 9, 2005, Defendant Wu submitted a physician Request for Services for an ophthalmologist. The first request was denied, and it is unclear whether a second request was submitted.

On May 23, 2005, Plaintiff requested renewal of his Glaucoma medication, which was scheduled to expire on June 7, 2005. Plaintiff again requested renewal on June 8 and July 12, 2005, but the medication was not renewed until August 12, 2005.

On July 12, 2005, Plaintiff submitted another refill request and spoke with Defendant Jimenez. Plaintiff informed Defendant Jimenez that he suffered from glaucoma, the pressure in his left eye had been steadily increasing, he suffered pain from the pressure and he feared going blind. Defendant Jimenez assured Plaintiff that he would personally handle the refill request. This assurance was given again on July 14 and July 18, 2005, but Plaintiff's glaucoma medication

was not refilled.

On July 21, 2005, Plaintiff submitted an inmate grievance complaining about not receiving his glaucoma medication.

On August 5, 2005, Plaintiff was informed, via the appeal responses, that his medication would not be renewed without a physician's order, and it was suggested that he visit the clinic's sick call window.

On August 11, 2005, Plaintiff submitted another grievance noting that he was informed at the sick call window that, if he wanted his medication renewed, he would have to submit a sick call or refill request, which Plaintiff had been doing for months. Additionally, Plaintiff was told that the medical staff was too busy to see him unless it was an emergency.

On August 12, 2005, Plaintiff's medication was renewed. Plaintiff alleges that Defendant McGuiness was aware of this two-month delay, and that her response to Plaintiff's appeal expressed indifference to Plaintiff's worsening eye conditions.

On January 27, 2006, Plaintiff informed medical staff that he had not seen a physician or primary care provider for six months. He was not scheduled to see a primary care provider until March 27, 2006.

Plaintiff went two months without his prescribed glaucoma medications, and had to file a grievance to receive a prescription. Plaintiff alleges that Defendant McGuinness was aware of the two-month delay, and that her response to the grievance expressed indifference to the violation of inmate medical services policies and procedures.

On May 22, 2006, after going without his prescribed glaucoma medication for over two months, Plaintiff submitted a medical Request for Services, seeking emergency treatment because of extreme pain and loss of vision in his left eye.

On May 25, 2006, Dr. Salmi submitted an urgent Request for Services for an ophthalmology consultation. Defendant McGuinness approved the request on May 30, 2006, but failed to ensure that Plaintiff was scheduled or seen by the specialist within the fourteen-day limit prescribed by policies and procedures. Defendant McGuinness received notice of this violation by June 21, 2006. Plaintiff was seen three and one-half months later.

8

On June 21, 2006, Defendant McGuinness responded to Plaintiff's grievance of February 28, 2006. At the second level review, Defendant McGuinness admitted that an urgent Request for Services was submitted on May 25, 2006. Defendant McGuinness allegedly was fully aware that Plaintiff's rights were being violated for failure to comply with policies and procedures, and she made no effort to correct the violations.

On July 21 and 27, and again on August 18, 2006, Plaintiff was seen by Dr. Salmi. Dr. Salmi noted that Plaintiff had not been seen by the ophthalmologist for glaucoma, and that he had left messages for the request to be processed. Plaintiff alleges that Defendant McGuinness failed to ensure that Plaintiff was scheduled to be seen within fourteen days.

On September 10, 2006, Plaintiff alerted medical staff of approximately 80% vision loss in his left eye and severe pain. Five days later, Plaintiff was taken for an emergency consultation with Dr. Yaplee. After examining Plaintiff, Dr. Yaplee informed Plaintiff that he had severe nerve damage and loss of vision caused by increased pressure build-up in his left eye. Dr. Yaplee prescribed medications at an increased strength: Timilol at .5% and Xalatan at .5%. Dr. Yaplee also recommended a laser procedure within one month to repair the nerve damage in Plaintiff's left eye.

On October 3, 2006, Dr. Salmi submitted a Request for Services to comply with the recommended laser procedure.

On July 31, 2007, Plaintiff states he was compelled to submit a grievance to accomplish the laser surgery.

On April 4, 2008, Defendant Enenmoh responded to Plaintiff's July 31, 2007 grievance, stating that there was no documentation from Dr. Yaplee or any other doctor recommending the laser surgery. Plaintiff alleges that Defendant Enenmoh was familiar with Plaintiff's health record, which held copies of Dr. Yaplee's recommendations, but that Defendant Enenmoh expressed indifference to Plaintiff's medical needs, resulting in delayed treatment and increased pain and suffering.

On January 8, 2008, Plaintiff states he was again compelled to submit a grievance because he had not been receiving his prescribed OAG medication in a timely manner, going for months

without it.  The grievance was granted and procedures for issuing medications were renewed.

Plaintiff states that it took him over eighty days to get his medication, and that he had to utilize

the inmate grievance procedure to do so, which allegedly violates procedures for issuing

medication.  Plaintiff states that these medications had been prescribed eight years earlier, but

alleges that Defendants Jimenez and Wu had not been following procedures for issuing

medications.

On January 27, 2008, Plaintiff submitted a grievance regarding the substitution of his

originally prescribed Xalatan for a less effective concentration of Timilol; that his OAG refill

orders were delayed for months; and that medical staff was responding with indifference to his

medical condition.  The first response to his grievance took seven months, while the second level

review took six months to respond.  Defendant Enenmoh reviewed the allegations and concluded

that no procedures had been violated.  Plaintiff alleges that Defendant Enenmoh denied any

wrongdoing because he was implicated in this matter.

On July 9, 2010, Plaintiff's OAG medication was still being delayed or denied.  Plaintiff

states that the prescription renewals had been promised to be automatic since January of 2008.

On September 15, 2011, Plaintiff states he was still not being scheduled for regular

ninety-day visits with the specialist, as required by procedures.  Plaintiff further states that

Defendant Enenmoh was the chief medical officer at the time, and alleges that it was his

responsibility to track all specialist referrals, to do a quarterly review of the specialty referral

tracking log, and to ensure that consultations are completed within the required timeframes.

As of the filing of this amended complaint, Plaintiff continues to receive treatment for his

OAG.

Plaintiff asserts causes of action for deliberate indifference to serious medical needs in

violation of the Eighth Amendment, a state law cause of action for intentional infliction of

emotional distress, and discusses the continuing violations doctrine. Plaintiff seeks compensatory,

punitive, and exemplary damages.

///

///

## C.    Defendants' Statement of Facts (DSF)[5]

### 1.    Background

1.  Plaintiff Anthony Craig Huckabee is a state prisoner who was housed at California Substance Abuse Treatment Facility (CSATF) from 2000 through 2012.  (ECF No. 193 ¶ 1, Fifth Amended Complaint.)

2.  At the time the allegations in the complaint arose, all Defendants worked at CSATF, where Dr. Enenmoh was the Chief Medical Officer, Dr. Wu was a primary care physician, and Jimenez was a Registered Nurse.  (ECF No. 193 ¶¶ 3–4.)

3.  Plaintiff initiated this lawsuit on April 28, 2009, and he amended his complaint on July 27, 2010, August 21, 2012, August 14, 2014, July 20, 2015, and May 2, 2016.  (ECF Nos. 1, 15, 33, 165, 183, and 193.)  He proceeds on his fifth amended complaint.  (ECF No. 193.)

4.  While he was housed at CSATF, Plaintiff was diagnosed with Open Angle Glaucoma (OAG).  (ECF No. 193 ¶ 1.)

5.  OAG is a serious medical condition that can lead to blindness, and treatment is focused on stabilizing eye pressure through the use of prescription eye drops.  (ECF No. 193 ¶ 1.)

6.  After screening the fifth amended complaint, the Court found that Plaintiff stated potentially cognizable claims against Dr. Wu, RN Jimenez, RN Jeffreys, and Dr. Enenmoh for Eighth Amendment deliberate indifference to his serious medical needs. (ECF No. 195 p. 15; ECF No. 199 p. 3.)

### 2.    Allegations Presented in Plaintiff's Fifth Amended Complaint Regarding Plaintiff's Appeal History and Defendants Dr. Wu, RN Jimenez, and Dr. Enenmoh

#### a.    Dr. Wu

7.  On August 25, 2004, a contract optometrist referred Plaintiff to an ophthalmologist because of rising pressure in Plaintiff's eyes, but Dr. Wu did not process the request. (ECF No. 193 ¶ 8.)

///

---

[5] ECF Nos. 246-3; 248–250; 251.

8.  On December 21, 2004, Dr. Wu reduced the strength of Plaintiff's prescription Timilol eye drops from .5% to .25% without consulting a specialist, even though Plaintiff's eye pressure had not dropped to a level that would safely justify the reduction in strength. (ECF No. 193 ¶ 8.)

9.  On March 9, 2005, Dr. Wu submitted a request for Plaintiff to see an ophthalmologist, but the request was denied and Plaintiff was not scheduled to see an eye specialist. (ECF No. 193 ¶ 9.)

### b.    RN Jimenez and Appeal Log No. SATF-E-05-3102

10. On July 12, 2005, Plaintiff submitted a request for renewal of his prescription eye medication to an unspecified person. (ECF No. 193 ¶¶ 10, 12.)

11. Later that day, Plaintiff spoke with Nurse Jimenez. (ECF No. 193 ¶¶ 10, 12.) During the conversation, Plaintiff informed him that he suffered from OAG, the pressure in his left eye had been steadily increasing, he was in pain, and he feared going blind. (ECF No. 193 ¶ 12.) Nurse Jimenez assured Plaintiff he would personally handle the refill request. (Id.)

12. Nurse Jimenez made the same promise on July 14, and July 18, 2005. (ECF No. 193 ¶ 12.)

13. On July 21, 2005, Plaintiff submitted Appeal Log No. SATF-E-05-3102. (ECF No. 193 ¶ 13.); Hood Decl., Ex. B[6] [SATF-E-05-3102].)

14. In the appeal, Plaintiff complained that Nurse Jimenez failed to fulfill promises made to Plaintiff on July 11, 14, and 18, 2005, that he would personally ensure Plaintiff's eye drop medication prescription was renewed. (ECF No. 193 ¶ 13; Hood Decl., Ex. B.)

15. The appeal was partially granted at the informal level of review on August 5, 2005, where Plaintiff was informed that his prescription medication could only be renewed with a physician's order. (ECF No. 193 ¶ 13; Hood Decl., Ex. B.)

16. The appeal was granted at the first formal level of review on August 15, 2005, because Plaintiff's prescription had been renewed on August 12, 2005. (ECF No. 193 ¶¶ 10, 14;

---

[6] In their motion, Defendants cite to Hood Decl., Ex. A. However, the appeal at issue is included as Exhibit B to the Hood Declaration. The Court has corrected this oversight throughout the Statement of Facts.

Hood Decl., Ex. B.)

17. In his appeal to both the first and second level of review, Plaintiff raised a new issue by complaining that the delay in renewing his prescription eye medication caused him damage, and he requested delay in resolving the appeal until he could undergo an eye examination.  (Hood Decl., Ex. B.)

18. The appeal was granted at the second level of review, in that Plaintiff's medication had already been renewed.  (Hood Decl., Ex. B.)

19. However, the second level appeal response informed Plaintiff that he could not add to the "Actions Requested" in the original appeal.  (Hood Decl., Ex. B.)

20. Plaintiff was further informed in the second level appeal response that he could submit the appeal for a third level review if he desired.  (Hood Decl., Ex. B.)

21. Plaintiff did not pursue this appeal through the third level of review.  (Hood Decl., Ex. B; Voong Decl., Ex. A [Pl. IATS III Appeal History].)

### c.     Appeal Log No. SATF-E-06-01218

22. On February 28, 2006, Plaintiff filed Appeal Log No. SATF-06-01218.  (ECF No. 193 ¶ 17; Voong Decl., Ex. O [Appeal Log No. SATF-E-06-01218].)

23. In the appeal, Plaintiff complained that dismissed Defendant Dr. Nguyen failed to fully evaluate his medical ailments during an examination on February 8, 2006.  (ECF No. 193 ¶¶ 16–17; Voong Decl., Ex. O.)

24. Plaintiff did not complain in this appeal about actions taken by any of the other Defendants.  (Voong Decl., Ex. O.)

25. Plaintiff exhausted this appeal at the third level of review on September 18, 2006.  (Voong Decl., Ex. O.)

### d.     Dr. Enenmoh and Appeal Log No. SATF-E-07-03515

26. On July 31, 2007, Plaintiff submitted Appeal Log No. SATF-E-07-03515, requesting that he be scheduled for tests recommended by his doctors, including laser surgery to treat his glaucoma.  (ECF No. 193 ¶ 26; Hood Decl., Ex. C[7] [Appeal Log No. SATF-E-07-03515].)

---

[7] In their motion, Defendants cite to Hood Decl., Ex. B.  However, the appeal at issue is included as Exhibit C to the

27. The appeal was partially granted by a non-party at the first level of review with respect to Plaintiff's request for glaucoma treatment, but denied as to his request for laser surgery because there was no documented evidence that it had been recommended or ordered by any doctor.  (Hood Decl., Ex. C.)

28. Dr. Enenmoh responded to Plaintiff's appeal at the second level of review on April 4, 2008, where he also denied Plaintiff's request for laser surgery because there was no documented evidence that it had been recommended or ordered by any doctor.  (ECF No. 193 ¶ 26; Hood Decl., Ex. C.)

29. Plaintiff did not appeal Dr. Enenmoh's denial of his request for laser surgery in SATF-07-03515, or otherwise submit this appeal for a third level review.  (Voong Decl., Ex. A; Lewis Decl., Ex. A [Pl. HCARTS Health Care Appeal History].)

30. Plaintiff did not specifically complain in this appeal about actions taken by any of the Defendants.  (Hood Decl., Ex. C.)

**e.      Appeal Log No. SATF-E-08-01648**

31. On January 8, 2008, Plaintiff submitted Appeal Log No. SATF-E-08-01648, in which he complained that he had been requesting renewal of his prescription medication since October 2007, without success.  (ECF No. 193 ¶ 27; Hood Decl., Ex. D[8] [Appeal Log No. SATF-E-08-01648].)

32. Plaintiff did not specifically complain in this appeal about actions taken by any of the Defendants.  (Hood Decl., Ex. D.)

33. The appeal was granted at the informal level of review on March 18, 2008, noting that Plaintiff's medications had already been renewed on March 8, 2008.  (ECF No. 193 ¶ 28; Hood Decl., Ex. D.)

34. The appeal was granted at the first level of review for the same reason.  (Hood Decl. Ex.

---

Hood Declaration.  The Court has corrected this oversight throughout the Statement of Facts.

[8] In their motion, Defendants cite to Hood Decl., Ex. C.  However, the appeal at issue is not included as an exhibit to the Hood Declaration in the docketed version of the declaration.  Nevertheless, as the appeal is included as Exhibit D to the courtesy copy of the Hood Declaration sent to the Court, the Court refers to the exhibit accordingly.  The consideration of this exhibit has not altered the Court's findings and recommendations on this matter.

D.)

35. Plaintiff did not submit SATF-08-01658 for any further levels of review. (Hood Decl., Ex. D; Voong Decl., Ex. A; Lewis Decl., Ex. A.)

**f.     Dr. Enenmoh and Appeal Log No. SATF-M-08-02566**

36. On January 27, 2008, Plaintiff submitted Appeal Log No. SATF-M-08-02566, in which he complained that he had been prescribed Timilol eye drops, rather than Xalatan, and that his prescription renewals were being delayed. (ECF No. 193 ¶ 28; Lewis Decl., Ex. D [Appeal Log No. SATF-M-08-02566].)

37. The appeal was screened out multiple times for procedural deficiencies before it was accepted for an informal level review and partially granted on April 10, 2008, in that Plaintiff was examined by a physician and instructed to follow proper policies and procedures to obtain prescription refills or renewals. (Lewis Decl., Ex. D.)

38. Plaintiff appealed SATF-08-02566 to the first formal level of review, where it was partially granted on December 8, 2008, in that Plaintiff's claims were investigated, it was determined that staff did not violate policy, and Plaintiff had begun to receive Xalatan. (Lewis Decl., Ex. D.)

39. Dr. Enenmoh partially granted Plaintiff's appeal at the second level of review on January 23, 2009, in that an investigation was conducted and it was determined that staff did not violate policy. (ECF No. 193 ¶ 28; Lewis Decl., Ex. D.)

40. Plaintiff appealed to the third level of review, complaining that medical staff decided he should not get formulary medications prescribed to him by eye specialists to keep the pressure in his eyes low. (Lewis Decl., Ex. D.)

41. Plaintiff's appeal was denied at the third level of review on January 22, 2010, nearly nine months after Plaintiff initiated this lawsuit, because a review of his Unit Health Record showed Plaintiff had been receiving medically necessary treatments and medications. (Lewis Decl., Ex. D.)

42. Plaintiff did not specifically complaint in this appeal about actions taken by any of the Defendants. (Lewis Decl., Ex. D.)

15

**g.    Further Allegations in the Complaint Against Dr. Enenmoh**

43. On October 30, 2008, a non-party doctor submitted an urgent request for services.  (ECF No. 193 ¶ 25.)

44. Dr. Enenmoh approved the urgent request the following day.  (ECF No. 193 ¶ 25.)

45. Plaintiff received laser surgery on his eyes fourteen days later, on November 14, 2008.  (ECF No. 193 ¶ 25.)

46. On May 4, 2010, an urgent request for services was submitted, but disregarded by Dr. Enenmoh, and so Plaintiff was not seen until eight days later, on May 12, 2010.  (ECF No. 193 ¶ 31.)

47. As of September 15, 2011, Dr. Enenmoh was responsible for tracking all specialist referrals, but Plaintiff was not being scheduled for regular ninety-day appointments with a specialist, as required by applicable policies and procedures.  (ECF No. 193 ¶ 33.)

**3.    Inmate Appeals Not Discussed in Plaintiff's Fifth Amended Complaint**

**a.    Third Level Appeals Processed by OOA**

48. OOA's records show that Plaintiff has exhausted twenty appeals at the third level of review arising from CSATF.  (Voong Decl. ¶ 7, Exs. A–U.)

49. Of those twenty appeals, eighteen are unrelated to any of Plaintiff's claims in the instant lawsuit.  (Voong Decl., Ex. B–N, P, Q.)

50. Of those twenty appeals, only two related to medical treatment Plaintiff received while at SATF, Appeal Log Nos. SATF-E-06-01218, discussed above and concerning allegations only against dismissed Defendant Dr. Nguyen, and SATF-E-04-01964.  (Voong Decl., Exs. O, R.)

**i.    Appeal Log No. SATF-E-04-01964**

51. On April 14, 2004, before any of the allegations in Plaintiff's fifth amended complaint arose, Plaintiff filed Appeal Log No. SATF-04-01964, which he ultimately exhausted at the third level of review on October 15, 2004.  (Voong Decl., Ex. R [Appeal Log No. SATF-E-04-01964].)

///

52. In the appeal, Plaintiff complained about swelling to his testicles.  Plaintiff further [sic] Dr. Wu treated him like he didn't care and that Dr. Wu did "not speak understandable English language."  (Voong Decl., Ex. R.)

53. Plaintiff raised allegations concerning his eye care for the first time at subsequent levels of review, but all of the allegations predate and do not concern the specific allegations Plaintiff raised in the fifth amended complaint against Dr. Wu.  (Voong Decl., Ex. R.)

54. Plaintiff did not specifically complain in this appeal about actions taken by any of the other Defendants.

### b.      Third Level Appeals Processed by HCCAB

55. HCCAB's records show that Plaintiff exhausted three health care appeals arising from CSATF.  (Lewis Decl. ¶ 7, Exs. A–D.)

56. One of those appeals, Appeal Log No. SATF-08-02566, is mentioned in Plaintiff's complaint and discussed above.  (Lewis Decl., Ex. D.)

57. Plaintiff does not mention the other two appeals, Appeal Log Nos. SATF HC 11053961 or SATF HC 10001124, in his complaint.

### i.      Appeal Log No. SATF HC 11053961

58. On November 17, 2011, over two-and-one-half years after initiating this lawsuit, Plaintiff filed Appeal Log No. SATF HC 11053961.  (Lewis Decl. Ex. B [Appeal Log No. SATF HC 11053961].)

59. In the appeal, Plaintiff complained that a non-party doctor performed unnecessary and unsuccessful surgeries on his eyes solely to make money from the State.  (Lewis Decl., Ex. B.)

60. Plaintiff did not specifically complain in this appeal about actions taken by any of the Defendants.

61. Plaintiff pursued this appeal through the third level of review, where it was denied on June 14, 2012, over three years after this lawsuit was filed.  (Lewis Decl., Ex. B.)

///

///

**ii.     Appeal Log No. SATF HC 10001124**

2    62. On October 27, 2009, approximately six months after initiating this lawsuit, Plaintiff filed

3          Appeal Log No. SATF HC 10001124.  (Lewis Decl., Ex. C [Appeal Log No. SATF HC

4          10001124].)

5    63. In the appeal, Plaintiff complained that his eye drop prescription needed to be refilled

6          every twenty days instead of every thirty days, because he was running out of the

7          medication before it was refilled.  (Lewis Decl., Ex. C.)

8    64. Plaintiff did not specifically complain in this appeal about actions taken by any of the

9          Defendants.  (Lewis Decl., Ex. C.)

10   65. Plaintiff pursued this appeal through the third level of review, where it was denied on May

11         4, 2010, over a year after this lawsuit was filed.  (Lewis Decl., Ex. C.)

12              **3.     Defendant McGuinness**

13   66. Plaintiff alleges that Dr. McGuinness was aware of the delay of his glaucoma medication

14         in May 2005; Dr. McGuinness was aware of the delay in his glaucoma medication in

15         February 2006; Dr. McGuinness was aware of the delay of Plaintiff seeing a specialist in

16         May 2006; and Dr. McGuinness failed to ensure that Plaintiff was seen by Dr. Salmi

17         within fourteen days in July and August 2006.  (ECF No. 193.)

18       **D.     Exhaustion of Administrative Remedies**

19           **1.     Parties' Positions**

20       Defendants Wu, Jimenez, Enenmoh, and McGuinness

21           Defendants contend that Plaintiff's claims against Defendants are limited to a small

22   number of discrete encounters, as follows:

23           Plaintiff claims that Dr. Wu did not process an August 25, 2004 referral to an

24   ophthalmologist, reduced the strength of Plaintiff's prescription eye drops on December 21, 2004,

25   and submitted a request on March 9, 2005 for Plaintiff to see an ophthalmologist that was denied.

26   (DSF 7–9.)  Plaintiff claims that on July 12, 14, and 18, 2005, Nurse Jimenez promised to

27   personally ensure Plaintiff's eye drops were renewed, but the prescription was not renewed until

28   August 12, 2005.  (DSF 10, 12, 16.)  Plaintiff claims that Dr. Enenmoh responded to two

administrative appeals at the second level of review, one on April 4, 2008, in which Plaintiff requested laser surgery, and one on January 23, 2009, in which he complained about issues with his prescription eye drops. (DSF 25, 27, 35, 38.) Plaintiff also claims that Dr. Enenmoh approved an urgent request for services on October 31, 2008, and Plaintiff received the surgery fourteen days later. (DSF 42–44.) Plaintiff further claims that Dr. Enenmoh disregarded a May 4, 2010 urgent request for services, and Plaintiff was not seen until eight days later. (DSF 45.) And, Plaintiff claims that as of September 15, 2011, Dr. Enenmoh was responsible for tracking all specialist referrals, but Plaintiff was not being scheduled for regular ninety-day appointments with a specialist. (DSF 46.)

With respect to Defendant McGuinness, Plaintiff alleges that Dr. McGuinness was aware of the delay in his glaucoma medication in May 2005 and February 2006, Dr. McGuinness was aware of the delay of Plaintiff seeing a specialist in May 2006; and Dr. McGuinness failed to ensure that Plaintiff was seen by Dr. Salmi within fourteen days in July and August 2006. (DSF 66.)

Defendants contend that Plaintiff was required to exhaust all claims against all Defendants *before* April 28, 2009, when he initiated this lawsuit. Defendants have provided twenty-three administrative appeals exhausted by Plaintiff between 2000 and 2012, when Plaintiff was housed at CSATF. Defendants argue that Plaintiff did not fully exhaust any appeal regarding the claims at issue in this suit, and that none of the appeals that Plaintiff did exhaust complained about any of te specific allegations against Defendants presented in the fifth amended complaint. Furthermore, Defendants emphasize that many of the appeals were not fully exhausted until well after the filing of the original complaint.

Plaintiff's Opposition

In opposition, Plaintiff argues that he was not required to list all of his 602 inmate appeals in the complaint in order to demonstrate that he exhausted all grievance procedures. Plaintiff notes that throughout the administrative grievance process, the Department of Corrections affirmed that monetary damages are beyond the scope of the appeal process, and therefore argues that his requests for monetary damages should be deemed denied before he filed his complaint in

19

this action, due to the unavailability of the relief requested.

Plaintiff also discusses the continuing violations doctrine, and argues that Defendants would have him file five to ten lawsuits based on the same violations, due to the length of time between submission of administrative appeals and the receipt of a final denial.

### Defendant McGuinness' Reply

In reply, Defendant McGuinness argues that Plaintiff does not dispute that the inmate appeals presented do not serve to exhaust Plaintiff's administrative remedies, because none of the exhausted appeals relate to this lawsuit. Defendant McGuinness further contends that Plaintiff's general arguments that monetary damages are beyond the scope of the appeal process, or that he suffers a continuing violation, cannot excuse Plaintiff from the exhaustion requirement. Finally, Defendant McGuinness argues that Plaintiff is unable to point to any grievance where there is a specific connection to the allegations against Dr. McGuinness, or show that the institution was on notice or had an opportunity to resolve the issue.

### 2. Specificity of Grievances

Defendants argue throughout their motion that Plaintiff's administrative grievances did not fully exhaust the claims at issue in this suit because Plaintiff did not specifically complain in his appeals about actions taken by any of the remaining Defendants, (DSF 24, 30, 32, 42, 54, 60, 64), or because the appeals are unrelated to the allegations against Defendants in the fifth amended complaint, (ECF No. 251, p. 2).

However, pursuant to CDCR's applicable regulations, Plaintiff was not required to list all staff members involved and expressly describe their involvement until the regulations were changed on January 28, 2011. (ECF No. 246-1, p. 15.) Further, as noted by Defendant McGuinness, Plaintiff's failure to specifically name each specific defendant is not fatal to the exhaustion process. (ECF No. 261, p. 4.) Rather, a grievance "suffices if it alerts the prison to the nature of the wrong for which redress is sought." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (quoting Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009)). The grievance process is only required to "alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Jones, 549 U.S. at 219 (citations omitted).

Upon review of the administrative grievances submitted by Plaintiff, two relate to the allegations at issue. In Appeal Log No. SATF-M-08-02566, Plaintiff states that since his intake into CDC in 1998, he had been prescribed Xalatan eye drops to treat his glaucoma. Upon his transfer to SATF, Plaintiff was given the weaker Timilol eye drops, and at a reduced .25% solution. Further, Plaintiff alleges that there have been "dozens of occasions" when he could not get his eye drops refilled or renewed, sometimes for months at a time, and that he is again experiencing a hardship in trying to renew and refill his meds. (Lewis Decl., Ex. D.; ECF No. 249, pp. 51–52.) This appeal was submitted on January 27, 2008. Though the allegations do not identify any individual defendant by name, as noted above, Plaintiff was not required to do so under the CDCR regulations at that time. Where a prison's grievance process does not specifically require a prisoner to identify offending prison staff in an inmate appeal, the failure to do so will not be seen as a *per se* failure to exhaust a claim against a defendant who was not named in the prison grievance process. <u>Jones</u>, 549 U.S. at 200–01. The Court finds that this grievance, which was denied at the third level of review on January 22, 2010, was sufficient to place the institution on notice of Plaintiff's continuing difficulties renewing and refilling his eye drop medications, and his complaint about the reduction in the strength of his prescription.

In Appeal Log No. SATF HC 10001124, which was filed on October 27, 2009, Plaintiff similarly complains that his eye drop medications for his glaucoma were not being timely refilled, and he was running out of his medications between refills. (Lewis Decl., Ex. C.; ECF No. 249, p. 42.) The Court finds that this grievance, which was denied at the third level of review on May 4, 2010, was also sufficient to place the institution on notice of Plaintiff's continuing difficulties renewing and refilling his eye drop medications.

The Court did not find any other fully exhausted grievances discussing the other allegations raised in the fifth amended complaint, specifically, denials of requests for an ophthalmology referral, denials of requests for laser surgery, failure to ensure Plaintiff was timely seen by specialists, or any Defendant's response to a particular grievance. Thus, the Court finds that Plaintiff has failed to exhaust his administrative grievances with respect to these other claims.

///

Remaining are Plaintiff's claims that: Defendant Wu reduced the strength of Plaintiff's prescription eye drops on December 21, 2004; Defendant Jimenez promised to personally ensure Plaintiff's eye drops were renewed on July 12, 14, and 18, 2005, but the prescription was not renewed until August 12, 2005; and Defendant McGuinness was aware of the delay in Plaintiff's glaucoma medication in May 2005 and February 2006.   There are no claims remaining against Defendant Enenmoh.

### 3.      Timing of Grievances

Defendants next contend that because Plaintiff is required to exhaust available administrative remedies prior to filing suit, Plaintiff must have fully exhausted all appeals *before* the filing of the original complaint.  However, Defendants have overlooked the exception which permits a plaintiff to proceed on new claims raised in an amended complaint, if those new claims were fully exhausted before the amended complaint was filed.  Even if the new claims arose before the date the initial complaint was filed, the claims can proceed so long as they were not alleged in the initial complaint, and are fully exhausted prior to the filing of the amended complaint.  See Cano, 739 F.3d at 1220–21; Akhtar, 698 F.3d 1210.

In determining whether Plaintiff fully exhausted his administrative remedies, the Court looks to whether the claims were *first* raised in an amended complaint filed after Plaintiff fully exhausted his appeal.  As discussed above, the applicable appeals are SATF-M-08-02566, which was exhausted on January 22, 2010, and SATF HC 10001124, which was exhausted on May 4, 2010.

The original complaint in this action was filed on April 28, 2009.  Plaintiff named as defendants Does employed as Chief Medical Officers, Medical Staff, and Pharmacy Staff at CSATF.  (ECF No. 1.)  Plaintiff did not identify a single defendant by name, and none of the current Defendants were identified in the original complaint.  In screening the complaint, the Court found that Plaintiff had made no allegations linking specific actions or omissions by specific Defendants to a deprivation of Plaintiff's rights, and therefore failed to state any cognizable claims.  (ECF No. 12.)  Given this lack of specificity, the Court finds that none of the

remaining claims at issue in this action were first raised in the original complaint.[9]

Plaintiff thereafter filed five amended complaints, four of which were screened by the Court. All of the amended complaints were filed after Plaintiff had fully exhausted Appeal Log Nos. SATF-M-08-02566 and SATF HC 10001124. (See ECF No. 15, filed July 27, 2010; ECF No. 33, filed August 21, 2012; ECF No. 165, filed August 14, 2014; ECF No. 183, filed July 20, 2015; ECF No. 193, filed May 2, 2016.) Thus, the Court finds that Plaintiff first raised his claims against Defendants Wu, Jimenez, and McGuinness regarding the renewal, refill, and reduction in strength of his eye drops after fully exhausting the relevant appeals. Therefore, Defendants are not entitled to summary judgment based on the failure to exhaust administrative remedies for these claims.

**IV.    Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment, (ECF No. 246), be GRANTED IN PART and DENIED IN PART, as set forth above;

2.  Plaintiff's claims against Defendants Wu, Jimenez, Enenmoh, and McGuinness related to denials of requests for an ophthalmology referral, denials of requests for laser surgery, failure to ensure Plaintiff was timely seen by specialists, or any Defendant's response to any of Plaintiff's submitted grievances, be DISMISSED;

3.  Defendant Enenmoh be DISMISSED from this action;

4.  This action proceed on Plaintiff's claims that:

    a.  Defendant Wu reduced the strength of Plaintiff's prescription eye drops on December 21, 2004;

    b.  Defendant Jimenez assured Plaintiff that he would personally handle Plaintiff's refill request for his eye drops on July 12, 14, and 18, 2005, but the medication was not refilled; and

---

[9] Although Plaintiff was not required to identify each Defendant by name in his administrative grievances to put the institution on notice of the problem, at the pleading stage, greater specificity is required to meet the linkage requirement under 42 U.S.C. § 1983. See Monell v. Dep't of Soc. Svcs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

c.  Defendant McGuinness was aware of the delay in Plaintiff's glaucoma medication in May 2005 and February 2006.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 30, 2018**                          /s/ _Barbara A. McAuliffe_
                                                  UNITED STATES MAGISTRATE JUDGE