# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY CRAIG HUCKABEE,<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL STAFF AT CSATF, et al.,<br><br>Defendants. | Case No. 1:09-cv-0749-DAD-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANT McGUINNESS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>ECF No. 277<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.   Background**

Plaintiff Anthony Craig Huckabee ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's fifth amended complaint against Defendants Wu, Jimenez, and McGuinness for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. Specifically, Plaintiff's claims are against: (1) Defendant Wu for reducing the strength of Plaintiff's prescription eye drops on December 21, 2004; (2) Defendant Jimenez for assuring Plaintiff that he would personally handle Plaintiff's refill request for his eye drops on July 12, 14, and 18, 2005, but the medication was not refilled; and (3) Defendant McGuinness, who was aware of the delay in Plaintiff's glaucoma Timolol medication in May 2005 and February 2006.[1]

---

[1] Findings and recommendations were issued on February 5, 2020 that summary judgment should be granted as to Defendants Wu and Jimenez. (ECF No. 288.)

(ECF Nos. 272, 274.)

On March 22, 2019, Defendant McGuinness filed a motion for summary judgment on the grounds that Defendant is entitled to judgment as a matter of law because there are no genuine issues of material fact, and Defendant is entitled to qualified immunity.[2] (ECF No. 277.) On April 8, 2019, Plaintiff filed his opposition to Defendant's motion for summary judgment. (ECF No. 282.) Defendant filed a reply on April 19, 2019. (ECF No. 283.) The motion is deemed submitted. Local Rule 230(l).

## II. Legal Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Id.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Id. (citing Celotex, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an

---

[2] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. ECF No. 277; See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir. 1988).

2

absence of evidence to support the nonmoving party's case." Id.

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. Id. at 929; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987). Further, the Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

///

### III. Discussion

#### A. Undisputed Material Facts[3]

1. Plaintiff, Craig Huckabee, a prisoner of the State of California. (ECF No. 277-1; Defendants' Separate Statement of Undisputed (SSUF) 1.)

2. At all times relevant to the allegations against her, Dr. McGuinness was employed by the California Department of Corrections and Rehabilitation (CDCR) as the Chief Medical Officer (CMO) for the California Substance Abuse Treatment Facility and State Prison at Corcoran (SATF). (SSUF 2.)

3. As the CMO, Dr. McGuinness was responsible for overseeing the prison's medical program for approximately 7,000 inmates. The position involved responding to audits, coordinating Medical Care with custody concerns and resources, attending various committee meetings both at the institution and at Headquarters, handling personnel issues and evaluations, budgeting, and scheduling. The Primary Care Providers in the clinics were responsible for the everyday issues of patient care and management. Dr. McGuinness did not provide direct medical care to any inmate/patient when she was the CMO. (SSUF 3.)

4. In her position as CMO, Dr. McGuinness was also responsible for responding to certain inmate appeals concerning medical treatment. (SSUF 4.)

5. Prior to January 28, 2011, there were four levels of appeal review (one informal level review and three formal level reviews). The informal level of review required the involved inmate and involved staff member(s) to attempt to resolve the grievance informally between themselves. If the inmate was not satisfied with the informal level response, he could submit the appeal for a formal review. The first formal level of review was conducted by the division head or his/her designee. If the inmate was not satisfied with the first formal level response, he could submit the appeal for a second

---

[3] These facts are taken from a combination of Defendants' Statement of Undisputed Material Facts (Doc. 277-1), Plaintiff's fifth amended complaint, and Plaintiff's opposition to Defendant's summary judgment motion. However, the Court notes that neither the fifth amended complaint nor Plaintiff's opposition is verified. ECF No. 193, 282, respectively. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified pleadings and motions may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement.

level of review. The second level of review was conducted by the institution head or his/her designee, such as Dr. McGuinness. If the inmate was not satisfied with the second level response, he could elevate the appeal to the third level of review, which was conducted by the Chief of the Office of Third Level Appeal - Health Care or Chief of the Inmate Appeals Branch in Sacramento, California. This constituted the CDCR Director's decision on an appeal, and completed the exhaustion process. (SSUF 5.)

6. In her supervisory role as CMO, Dr. McGuinness was not Plaintiff's Primary Care Provider, nor did she ever provide direct medical care to Plaintiff during this time period. To the best of her knowledge, she has never met Plaintiff, and her only involvement with him was responding to his appeals at the second level of review.

7. On or about July 21, 2005, Plaintiff submitted an inmate appeal that was assigned Log No. SATF-E-05-03102. Plaintiff's appeal stated that beginning on May 26, 2005, he had attempted to renew his medication several times, but that his prescription had not been refilled. Plaintiff requested that his medication be renewed, or that he be given a reason why it had not been renewed. (SSUF 7.)

8. On or around August 5, 2005, Plaintiff's appeal was partially granted at the informal level. Plaintiff was informed that medications can only be ordered by a physician, and nursing staff can only bring to a physician's attention medical problems. Plaintiff was also informed that if he had not received his medication, he could come to the RN Sick Call line to bring the issue to medical staff's attention. (SSUF 8.)

9. On or around August 11, 2005, Plaintiff appealed to the first level of review. He added that he continued to have problems getting his medication renewed.

10. On August 16, 2005, Plaintiff's appeal was granted at the first level of review. The response stated that pharmacy records showed that Plaintiff's medications were renewed by Dr. Bhatt on August 12, 2005. The appeal advised Plaintiff to review the refill request slip with helpful information for the next time refills were

needed.

11. Around August 23, 2005, Plaintiff appealed to the second level. Plaintiff's appeal stated, "I would like to delay time on this 602 until I go to CTC for an eye examination to check exactly how much damage was done thru the 3 month denial of my meds. (eye drops-Timolol.)". (SSUF 11.)

12. As the CMO, Dr. McGuinness was provided Plaintiff's appeal at the second level to review. On or around September 18, 2005, she responded to Plaintiff's appeal to the second level. Her response informed Plaintiff that she had reviewed his Unit Health Record and first level of review response. Dr. McGuinness observed that Plaintiff had received his medication. Dr. McGuinness therefore granted the appeal on the grounds that his request to receive medication renewals had been approved. Attached to her response was a copy of Plaintiff's patient profile, showing that he had received his medication. It was unclear if Plaintiff was seeking any further relief. To the extent that he was, Dr. McGuinness informed him that the appeal process does not allow inmates to add to the "Acts Requested" in the original appeal, and any additional actions requested cannot be considered at this time and must be addressed on a separate CDCR 602 Form. (SSUF 12.)

13. Upon reviewing Plaintiff's medical records, Dr. McGuinness did not have reason to believe that Plaintiff would have further issues receiving refills with his medication. It appeared that Plaintiff had not used the correct procedure to refill his medication; however, once Plaintiff saw Dr. Bhatt, he had his prescription renewed and he received his medication. (SSUF 13.)

14. On or around February 28, 2006, Plaintiff submitted an inmate appeal that was assigned Log No. SATF-E-06-01218. Plaintiff's appeal stated that he saw Dr. Nguyen on February 8, 2006, and he believed that Dr. Nguyen did not treat him respectfully and ignored pain Plaintiff was feeling in his ribs and chest. Plaintiff's appeal requested that his medication be renewed and that he sees a doctor to discuss all his medical problems. (SSUF 14.)

15. On or around March 26, 2006, Plaintiff's appeal was partially granted at the informal

level. Plaintiff was informed that he needed to bring a list up to the clinic window of all of his expired medication. It also indicated that Plaintiff would be seeing a doctor on March 30, 2006, to address any further problems. (SSUF 15.)

16. On or around March 30, 2006, Plaintiff appealed to the first level of review. Plaintiff acknowledged that he saw a doctor on March 30, 2006, but he did not have the time or information to discuss all his issues with the doctor. He also stated that it took 4 working days to return the appeal after the informal level answer. Finally, Plaintiff stated that his current medication list was sent with the 602 Form, and that his medical needs had not been met (SSUF 16.)

17. Around May 9, 2006, Plaintiff's appeal was granted at the first level of review. The response stated that Plaintiff's medical file and appeal had been reviewed and given careful consideration. Plaintiff's Unit Health Record (UHR) showed that Plaintiff's medical condition was evaluated by Dr. Greene on March 30, 2006, and appropriate treatment was provided including prescription medications. The response noted that pharmacy records showed prescription medications were renewed and dispensed for Plaintiff on April 28, 2006, and May 1, 2006, including: Timolol .25% Opth. Solution 5 ml., Artificial Tears 5 ml., Mintox Plus Tabs, and Ibuprofen (Motrin) 800 mg. (SSUF 17.)

18. On or around May 11, 2006, Plaintiff appealed to the second level. Plaintiff's appeal stated that not all of his medical problems were addressed by Dr. Greene, that he wanted to see a specialist for his back, and that he wanted to be re-evaluated to obtain pain medications for his back. (SSUF 18.)

19. Dr. McGuinness was provided Plaintiff's appeal at the second level to review. On or around June 17, 2006, she responded to Plaintiff's appeal to the second level. Her response informed Plaintiff that she had reviewed his Unit Health Record and first level of review response. Dr. McGuinness observed that Plaintiff had been seen and examined by the Optometry clinic, including Dr. Nguyen, Dr. Schuster, Dr. Greene, and Dr. Salmi. With specific reference to his medication, Plaintiff's records indicated that his prescription for Timolol .25% Opth. Solution 5 ml.,

Artificial Tears 5 ml., Mintox Plus Tabs, and Ibuprofen (Motrin) 800 mg had been renewed by Dr. Greene. Dr. McGuinness therefore granted the appeal on the grounds that his request to receive medication renewals had been approved and his request to see a doctor to discuss medical issues had been granted.

20. Prior to receiving the second level appeals for Appeal Log No. SATFE-06-01218 and Appeal Log No. SATF-E-06-01218, Dr. McGuinness was unaware that Plaintiff had delays with renewing his glaucoma medication in May 2005 or February 2006.

21. Dr. McGuinness was not involved in addressing Plaintiff's appeals at the lower level.

22. By the time that Dr. McGuinness received Plaintiff's appeals at the second level, Plaintiff's glaucoma medications had already been renewed. Dr. McGuinness therefore believed that Plaintiff's issue had been resolved. (SSUF 22.)

23. Dr. McGuinness has never intended to ignore Plaintiff, and never intended that Plaintiff suffer any undue or unnecessary pain. Her intentions throughout were to ensure that Plaintiff's inmate appeals were processed within CDCR's rules and California Code of Regulations title 15, and that Plaintiff received appropriate treatment for his condition.

24. Plaintiff does not believe that Dr. McGuinness was his primary care provider and does not know if he ever saw Dr. McGuinness in any capacity, would not recognize her or swear that he had any interaction with her. His only communication with Dr. McGuinness was through the 602 appeal process. (SSUF 24-26, 29-30.)

25. Plaintiff admits that at the time he submitted Appeal number 05-03102 to the Second Level Appeal on August 23, 2005, he was receiving eye drops. (SSUF 32.)

26. Plaintiff admits his eye medication Timolol was refilled on or around April 28, 2006. (SSUF 33.)

27. Plaintiff admits that at the time he submitted Appeal number 06-01218 to the

Second Level Appeal on May 11, 2006, he was receiving his eye drops. (SSUF 34.)

**B. Deliberate Indifference to Serious Medical Needs**

1. <u>Standard for Deliberate Indifference to Serious Medical Needs</u>

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds by <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1082–83 (9th Cir. 2014); <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Jett</u>, 439 F.3d at 1096 (citation omitted).

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. <u>Snow</u>, 681 F.3d at 985. Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment or by the way in which medical care is provided. <u>Hutchinson v. United States</u>, 838 F.2d 390, 394 (9th Cir. 1988). "Deliberate indifference is a high legal standard," <u>Simmons v. Navajo Cty., Ariz.</u>, 609 F.3d 1011, 1019 (9th Cir. 2010); <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. <u>Jett</u>, 439 F.3d at 1096. "Mere delay of medical treatment, without more, is insufficient to state a claim of deliberate medical indifference." <u>Robinson v. Catlett</u>, 725 F.Supp.2d 1203, 1208 (S.D. Cal. July 19, 2012) (quoting <u>Shapley v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir.1985)). To state a claim for deliberate indifference arising from a delay in treatment, a prisoner must allege that the delay was harmful, although an

allegation of substantial harm is not required. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1991), overruled on other grounds by, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir.1997).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06).) "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. Cty. of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987. "To show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health." Id.

2. Serious Medical Need

Defendant does not dispute that Plaintiff has a serious need. It is undisputed that Plaintiff was diagnosed with glaucoma. "Examples of serious medical needs include [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (alteration in original) (citation and internal quotation marks omitted). The evidence shows that Plaintiff was receiving medication to treat glaucoma. Thus, viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his

favor, a reasonable juror could find that glaucoma is a serious medical need.

        3. <u>Defendant McGuinness' Handling of Appeals did not Delay Plaintiff Glaucoma Medication</u>

Plaintiff has failed to raise a disputed issue of material fact that Dr. McGuinness was aware of a substantial risk of serious harm from a purported delay in receiving the Timolol medication and that Dr. McGuinness drew that inference.

<u>No Direct Care</u>

It is undisputed that Dr. McGuinness did not treat Plaintiff.  Dr. McGuinness was not Plaintiff's primary care physician and never saw Plaintiff in that capacity as a physician. (SSUF 24.)  Plaintiff did not have any direct communication with Dr. McGuinness, and the only communication he had with her was through the 602 appeals process.  (SSUF 29, 30.)  Thus, Plaintiff's claim does not arise out of any direct care provided by Dr. McGuinness.  Indeed, it is undisputed the Defendant McGuinness' only involvement with Plaintiff was responding to Plaintiff's two inmate 602 appeals, and Plaintiff contends that these appeals are how Dr. McGuinness knew of the delay in Plaintiff's medication.

<u>Dr. McGuinness is not liable based upon Supervisor liability</u>

In his opposition, Plaintiff argues that Defendant "knew or should have known" the difficulties Plaintiff was experiencing with obtaining his medications.   Plaintiff attempts to raise an issue of fact by submitting a Memo dated March 14, 2006 from the Secretary Woodford of California Department of Corrections and Rehabilitation showing that there are systematic problems in CDCR's medical department and Defendant McGuinness should have known Plaintiff was not receiving his medication.  (ECF No. 282 p.3 and p. 9.)  Plaintiff also attaches a purported copy of  Dr. McGuinness' "duty statement" setting forth the job responsibilities for the Chief Medical Executive. (ECF No. 282, p. 7.)

As a threshold matter, a supervisor is not responsible merely because a grievance/appeal has been submitted for consideration.  In order to state a claim against such individuals, plaintiff must demonstrate such supervisor's own culpable action or inaction in the alleged violation, not simply an awareness of the alleged violation.  <u>Green v. Link</u>, No. 219CV1324JAMKJNP, 2019

WL 4033884, at *4 (E.D. Cal. Aug. 27, 2019). Plaintiff must demonstrate that each defendant personally participated in the deprivation of their rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff's argument that Defendant McGuinness "should have known" of his medications delay does not raise an issue of fact. Dr. McGuinness cannot be liable solely based on her role as a supervisor of other physicians who were directly caring for Plaintiff. Moreover, Plaintiff does not raise an issue of fact merely by offering the "duty statement" of the Chief Medical Executive or "systematic" medical problems at the institution. Again, Defendant McGuinness cannot be held liable solely for her role as a supervisor of other physicians, and Plaintiff must present facts that Defendant "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045.

<u>Defendant's "Knowledge" through Plaintiff's Appeals</u>

Plaintiff contends that the grievance/appeals process put Defendant McGuinness on notice that Plaintiff was not timely receiving his medication.

Plaintiff filed two appeals that his Timolol medication was not being provided. Defendant McGuinness reviewed both appeals at the second level of review. Plaintiff's first inmate appeal, filed on July 21, 2005, was assigned Log No. SATF-E-05-03102 in which Plaintiff wanted to renew his medications. Following a response at the first level, Plaintiff appealed on August 23, 2005 to the second level, and on September 18, 2005, Defendant McGuinness responded to Plaintiff's appeal at the second level. By the time the appeal had reached the second level and Defendant McGuinness responded, Plaintiff's medication had been renewed by Dr. Bhatt, before reaching the second level appeal on August 12, 2005. Dr. Bhatt had refilled Plaintiff's medication prior to Defendant McGuinness' involvement. (ECF No. 277-3 p. 15 of 68.) Thus, by the time the appeal reached the second level for Defendant McGuinness' review, the medication Plaintiff sought to be refilled had already been refilled.

Plaintiff's second appeal, filed on February 28, 2006, was assigned Log No. SATF-E-06-

01218, and requested among other things that his medication be renewed. Plaintiff's second appeal was submitted to the second level around May 11, 2006 to which Defendant McGuinness responded on June 17, 2006. (SSUF 18, 19.) Defendant's evidence shows that Plaintiff's medication had been renewed before the second level appeal, on April 28, 2006 by Dr. Greene. The evidence shows that Dr. Greene refilled Plaintiff's medication prior to Defendant McGuinness' involvement. (ECF No. 277-3, p.30 of 68.) Thus, by the time the appeal reached the second level for Defendant McGuinness' review, the medication Plaintiff sought to be refilled had already been refilled.

The undisputed evidence shows that in each appeal, Defendant McGuinness reviewed Plaintiff's health records, the first level response to each appeal, the treating physician's renewal of medication and verified that his glaucoma medication had been refilled. (SSUF 12, 19.) Once Plaintiff saw Dr. Greene and Dr. Bhatt, Plaintiff's prescriptions were renewed and he received his medication. Thus, the medication Plaintiff sought had already been refilled by the time McGuiness reviewed the appeals. Accordingly, there is no evidence that Defendant McGuinness delayed his medication.

Plaintiff argues that both appeals were in Defendant McGuinness' possession for 25-30 days which gave her plenty of time to investigate Plaintiff's problems and the "fact that plaintiff filed two (2) appeals, 6 (six) months apart about the same issues, shows that the defendant did nothing to resolve plaintiff's issues after the first appeal." (ECF No. 282 p. 3.)

Plaintiff, however, cannot hold Defendant McGuinness liable for her supervision of physicians responsible for Plaintiff's care and for not rectifying those physician's lapses in his medication. As discussed above, Defendant McGuinness is responsible only for her own conduct. Defendant McGuinness did not cause the lapse in medication or delay refilling the medication. The undisputed evidence shows that upon reviewing Plaintiff's two appeals and Plaintiff's medical records, Defendant McGuinness determined the medication had been refilled.

Plaintiff has failed to raise a triable issue of fact that defendant "knows of and disregards an excessive risk to inmate health or safety." See Farmer. By the time Dr. McGuinness knew of Plaintiff's medication lapse, which was when she reviewed the appeals at the second level, she

knew that Plaintiff's medication had already been refilled. Plaintiff has failed to raise a disputed issue of material fact that Dr. McGuinness was aware of a substantial risk of serious harm from the purported delay/lapse in medication and that Dr. McGuiness drew that inference.

### C. Qualified Immunity

Defendant argues even if she committed constitutional violations, she is entitled to qualified immunity. The defense of qualified immunity protects "government officials...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether the right was clearly established, such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 236 (2009); Saucier v. Katz, 533 U.S. 194, 201 (2001). The evidence must be viewed in the light most favorable to the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1866 (2014).

Because this Court finds Defendant McGuinness is entitled to summary judgment on the merits of the Eighth Amendment claim, there is no reason to reach the qualified immunity issue in this case. Thus, this is not a case where qualified immunity need be determined.

### IV. Conclusion and Recommendation

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendant McGuinness' motion for summary judgment, (ECF No. 277), be GRANTED, and
2. Judgment be entered in favor of Defendant and against Plaintiff.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the

14

magistrate's factual findings" on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991) ).

IT IS SO ORDERED.

Dated: **February 18, 2020**  /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE